REGAN, Judge.
Plaintiffs, Andrew Hvasta and his sub-rogee collision insurer, Keystone Automobile Club Casualty Company, instituted this suit against the defendants, Indemnity Insurance Company of North America[1] and Joseph L. Aiena, Sr., endeavoring together to recover the sum of $436.50,[2] representing property damages incurred by Hvasta’s parked automobile, when it was struck by the vehicle operated by Rev. M. Roth, who was involved in an intersectional collision with a vehicle operated by Aiena, Jr., which plaintiffs assert resulted from their concurrent negligence.
Defendant, Joseph L. Aiena, Sr., whose minor son was driving his Ford automobile when the collision occurred, failed to answer this suit. His codefendant, the insurer of Rev. Roth, answered and denied that its insured was negligent. The defendant then filed a supplemental answer in which it contended that the issue of Rev. Magnus Roth’s negligence had already been adjudicated in two cases, which had been consolidated for trial in the Civil District Court and the judgments rendered therein absolved Rev. Roth of negligence; therefore, this defendant insists that the plaintiffs are judicially estopped from raising that issue in this court.
From a judgment dismissing plaintiffs’ suit against Indemnity Insurance Company of North America and reserving plaintiffs’ rights against Aiena,[3] the plaintiffs have prosecuted this appeal.
The record reveals that at 3:30 p. m. on February 27, 1957, Joseph L. Aiena, Jr., a 17-year-old student, was driving his father’s Ford automobile in Toulouse Street toward the lake at a speed of 30 miles per hour; as he approached the intersection of N. Hennessy Street, the automobile operated by Rev. Roth was slowly moving in N. Hennessy Street toward Toulouse Street. He paused or stopped and could see a distance of 100 feet into Toulouse Street in the direction of the river; he observed no moving traffic therein; he then entered the intersection at a speed of between five and ten miles per hour. The respective vehicles collided slightly beyond the center of the -intersection.
Neither street was controlled by a stop sign, they were of equal dignity and the speed limit was 20 miles per hour.
William T. Abbott, the only independent eyewitness, was standing on the downtown river corner of this intersection. In explaining how the accident occurred, he testified that when the vehicle driven by young Aiena was approximately 200 feet removed from the intersection, he observed the vehicle operated by Rev. Roth drive up to Toulouse Street, pause momentarily as the driver looked to his right and left; he then drove into the intersection and when he observed the fast approach of Aiena, Jr., he accelerated which caused the rear wheels to spin, as was evidenced by the sound of gravel being thrown against the rear fenders. At the same time, Abbott recounted, the youth apparently observed the other vehicle as it entered into the intersection, since he applied his brakes, then swerved to the right, but was unable to avoid colliding with Rev. Roth’s vehicle. The left front of young Aiena’s vehicle struck the left rear of the other car. Thereafter, Rev. Roth temporarily lost control of his vehicle, causing it to collide with Hvasta’s car, which was parked on the right side of Hennessy Street, beyond the intersection. Abbott stated that his attention was attracted to Aiena’s vehicle because it was moving at an excessive speed *310 and Aiena in this suit concedes that he was traveling at least 30 miles per hour in a 20 mile zone.
The youth, Aiena, who appeared in the lower court and testified on plaintiff’s behalf,[4] related that as he neared the intersection of N. Hennessy, Rev. Roth’s vehicle skidded into the center of the intersecting roadways and stopped directly in the path of his vehicle. He did not see this vehicle at any time before it entered Toulouse Street and was “dead center right in front” of him. Aiena said he applied his brakes, swerved to the right, but was unable to avert the accident. He frankly related that his brakes were not in very good condition, “they were sort of low to the floor”. He then more pertinently conceded that he was moving at a speed of 30 miles per hour in a 20 mile speed zone, although in two other cases tried before a judge of the Civil District Court, he testified that his vehicle was only moving at a speed of 20 miles per hour. The trial judge did not believe this assertion and found as a fact that his vehicle “was proceeding at an excessive rate of speed”.
Officer Robert Calico, who conducted the ensuing police investigation, fixed the position of initial impact “practically in the middle of the street, maybe a little past the middle”. There were skid marks left by both vehicles. He said those left by the Aiena car measured 40 feet from the point of the collision, while the marks from Rev. Roth’s automobile were 18 feet in length. He carefully pointed out that the skid marks made by the Aiena car could have been longer if its path had not been obstructed by the Roth vehicle.
Rev. Roth, who was 66 years of age at the time of the accident, testified that he was operating a new Pontiac automobile and was accompanied by Louis Mas-sett, when the accident occurred. He was driving in N. Hennessy Street, a dirt and gravel surfaced roadway and he stated that he did not realize Toulouse was a paved street[5] until he was almost to the intersection. But he testified that as he reached the intersection, he paused or stopped and looked in both directions. He could see 100 feet in Toulouse Street toward the river and he observed nothing approaching. He then accelerated his vehicle to a speed of approximately ten miles per hour and had cleared the center of the intersection when he was struck. He said he never saw Aiena’s automobile before the actual impact. The clergyman recalled that his car had been “thrown around”, but was too dazed to notice its progress past the intersection. He denied that he had ever applied his brakes prior to the collision, and therefore was at a loss to explain the skid marks, which plaintiffs say were caused by his vehicle. It will be recalled that the witness Abbott said that these impressions of the tires on the roadway were caused by the spinning of the wheels, rather than by skidding due to the application-of brakes.
Louis Massett, the guest passenger, verified that Rev. Roth had stopped and looked both ways before entering the intersection at a speed of between five to ten miles per hour. He said the rear of their car had just passed the center of the intersection when the collision occurred.
Counsel for plaintiffs contend that the negligence of both drivers, i. e., the youth’s *311 excessive speed of at least 30 miles per hour in a 20 mile zone and the clergyman’s failure to maintain a proper lookout, precipitated the collision.
Defendant, his insurer, argues that Rev. Roth has been absolved of negligence by virtue of the judgments rendered in two other cases by the Civil District Court, which arose out of the same accident, and therefore plaintiffs are estopped from raising the issue of his negligence again. Should the defense of judicial estoppel lack merit, the defendant insurer insists that the proximate cause of the accident was the negligence of Aiena, Jr.
In order to consider this case on its merits, we pretermit a determination of whether the plea of judicial estoppel possesses validity, and therefore the only question which is posed for our consideration is one of fact, and that is, whether the record supports the trial court’s finding that Rev. Roth was not at fault.
To reiterate, it will be recalled that this intersection is not controlled by stop signs nor did either street possess the right of way, and the speed limit was 20 miles per hour.
The evidence adduced herein clearly preponderates to the effect that the Aiena Ford was being operated at a high rate of speed, far in excess of the legal limit of 20 miles per hour. The evidence likewise reflects that the front of the Aiena car was damaged to the extent of about $100[6], and that there were skid marks impressed upon the roadway by his car which measured 40 feet hack from the point of impact.
It is true that evidence was introduced to show skid or spinning wheel marks caused by the Roth vehicle; however, we are inclined to believe as Abbott testified that these resulted from the car being accelerated a split second before the collision when Roth, unconsciously motivated by the natural instinct of self-preservation, endeavored to remove himself from the path of Aiena’s vehicle. To reason otherwise, we would have to ignore the preponderance of the evidence, and therefore completely discount the testimony of Rev. Roth, Massett and the independent eyewitness Abbott, two of whom were emphatic in asserting that at no time prior to the accident were the brakes of the Roth vehicle applied.
As we have related hereinabove, Rev. Roth paused or stopped at the corner of N. Hennessy Street and Toulouse Street, and from there was able to see one-third of a block or 100 feet into Toulouse Street in the direction of the river. We are convinced that the reason that he did not observe Aiena’s vehicle at this time was because it was not then in view, being more than 100 feet removed from the intersection when Rev. Roth entered therein. Under the circumstances, Roth had the right under the law to assume that if there was any car out of his range of vision approaching N. Hennessy Street from Toulouse, its operator would be moving at a lawful rate of speed and in a prudent manner. Therefore, Rev. Roth acted as a reasonably careful man when he entered the intersection and endeavored to traverse it.
In disposing of the issue of Rev. Roth’s contributory negligence, we have relied on the rationale enunciated by the organ of the Supreme Court in the case of Thomas v. Checker Cab Company of New Orleans.[7]
*312 In fact, we believe that the facts of this case are more emphatically in favor of the conclusion which we have reached herein than they were in the Thomas case, since, in that case, a stop sign and a right of way street were issues that the court was required to dispose of before finding Thomas free from fault.
That Rev. Roth had the right of way was undisputed for he approached from the right of the Aiena vehicle at an intersection which was not controlled by traffic signs. He was not called upon to anticipate that this vehicle would be operated at an unlawful rate of speed and in an improper manner. Having preempted the intersection after pausing or stopping, looking and ascertaining that there was no apparent danger, he clearly possessed the right of way over Aiena’s vehicle, and this would be true even if Aiena’s vehicle had been operated in a right of way street.[8]
On the other hand, the fact that the Aiena vehicle was being operated in a paved street did not justify its driver in disregarding fundamental rules of safety nor did it permit him to operate his vehicle in complete disregard of the rights and safety of others.
The whole tenor of the record leads us to the inevitable conclusion that the Aiena vehicle approached this intersection at an excessive rate of speed and its driver failed to possess control of the car. He was therefore negligent and we are of the opinion that his negligence was the sole and proximate cause of the accident.
Rev. Roth has successfully carried the burden of proof and exculpated himself from negligence, which, of course, he was required to do, since as a result of this collision with Aiena’s vehicle, he struck a parked car, which in itself established a prima facie case of negligence against him, insofar as the plaintiffs were concerned.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Insurer of Rev. Roth, the operator of the vehicle which struck plaintiff’s parked car.

. Represents $50, the amount deducted under Hvasta’s contract of insurance. The balance, $386.50, was the amount expended by Keystone to repair Hvasta’s vehicle.

.No judgment by default appears in the record.

. It is interesting to note at this point that no answer to plaintiffs’ suit was filed by Aiena, Sr., on behalf of his son; despite this fact no judgment of default was taken against Aiena, Sr., since none appears in the record. It is unusual, to say the least, that the minor son of one of the defendants, and the operator of one of the vehicles involved, should appear as a witness on behalf of the plaintiffs.

. Neither street possessed the right of way by local ordinance. The mere fact that one street is paved does not of itself give to vehicles moving in that street priority over those being driven in intersecting unpaved streets. Toups v. Trent, La.App. 1956, 85 So.2d 96, 99.

. Aiena, Jr., testified that the left front fender, grill and bumper of his vehicle were damaged and he estimated the cost of repair thereof in the amount of $100.

. “Where motorist stopped for a stop sign upon arriving at intersection with right-of-way street and looked to the right but did not see approaching taxicab although vision was unobstructed for at least 100 feet in that direction, motorist had right to assume that if there was any automobile out of his range of vision approaching from that direction its operator would be driving at lawful rate of speed and in proper manner, and thus the motorist *312 acted as a reasonably careful and prudent person -when lie entered intersection and proceeded across street, and motorist, wliose automobile collided with defendants’ high speed taxicab, was not con-tributorily negligent.” See Syllabus 2, 229 La. 1079, 87 So.2d 605 (1956).

. Booth v. Columbia Casualty Company, 1955, 227 La. 932, 80 So.2d 869.