123 So.2d 835 (1960)
Henry L. BOYD et al., Plaintiffs-Appellants,
v.
Sally J. WHITE et al., Defendants-Appellees.
No. 9213.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1960.
On Rehearing October 27, 1960.
Certiorari Denied December 12, 1960.
*836 McKeithen, Mouser & McKinley, Monroe, James W. Finley, Shreveport, for appellants.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellees.
GLADNEY, Judge.
This is a tort action for damages brought on behalf of the minor, George Westbrook, who received injuries on January 20, 1959, when the motorcycle which he was driving collided with an automobile driven by Mrs. Sally J. White. The accident occurred in the intersection of Knight Street with a service road which parallels the Barksdale-Shreveport Expressway in Caddo Parish. Westbrook, fifteen years old, received a comminuted fracture of the right femur, which required an operation to bring about union of the bone, as well as other injuries. Made defendants are Mrs. White and her husband, W. Reagan White, residents of Texas, and their liability insurer, Indemnity Insurance Company of North America. The case was tried and judgment rendered rejecting the demands of plaintiffs, who have appealed.
The principal question presented is whether or not young Westbrook was guilty of contributory negligence barring recovery. We find Mrs. White was clearly guilty of negligence as hereinafter shown.
At the scene of the accident the Barksdale-Shreveport Expressway runs generally east and west and consists of two concrete slabs of pavement each twenty-four feet in width. Paralleling each side and separated from the concrete pavement by a neutral ground forty-eight feet in width are two twenty-five foot black-topped access or service roads. Knight Street is a thirty-one foot paved street which intersects the black-topped access road from the north. At its southwest corner a stop sign faces traffic moving south and the street dead ends at that point. Across from its intersection an opening in the neutral ground permits traffic to proceed from the highway into the access road or to continue on into Knight Street. This opening is slightly wider than Knight Street. At the time of the accident, between 3:00 and 4:00 o'clock P.M. the street was dry and weather conditions were normal.
Immediately prior to the accident Mrs. White was driving her automobile westerly along the north side of the highway and upon approaching the intersection of Knight Street, she intended to make a right turn into the opening between the neutral ground immediately south of Knight Street. She testified she reduced her speed and entered the opening with somewhat of a broad turn, and turned her vehicle back toward the right side as she was in the center of the neutral ground. She said she did not stop after making her right turn, but slowed down to a speed of three to five miles per hour. She then entered the service road, accelerating to about ten miles per hour, she was asked if she ever saw the boys on the motorcycle, which question she answered: "Just as II was out in the middle of the intersection, and I heard a noise, and I turned my face to the window, and at the same time it was the impact." She repeatedly affirmed that she never did see the boys prior to the collision.
George Westbrook was traveling easterly along the access or service road, riding in tandem fashion with David Matlock and Frank Wilson on a Zundapp motorcycle which was made in Germany and is equipped with an extra long seat. Wilson and Matlock were of about the same age as Westbrook. Matlock was seated in the rear, holding onto a strap with which the motorcycle is equipped, and Frank Wilson was in the middle. Westbrook testified that he was moving at a speed which he estimated to be about thirty-five miles per hour and was driving slightly to the right or south of the proximate center line of the service road; that he watched Mrs. White as she made her turn into the neutral zone, that she slowed down considerably and appeared to have stopped, and he assumed that she saw him and was according to him *837 the right-of-way. He said at first he had started to put on his brakes, but after it looked as though she was stopping, he let up on his brakes and proceeded forward, but the automobile suddenly accelerated its speed into the intersection, and that when the automobile did this he realized he did not have time to stop and first attempted to pass to the front of the automobile, but seeing that he could not do this safely, he tried to change his position and go around its back end. The motorcycle struck the automobile on its left rear fender.
The testimony of Matlock strongly corroborates that of Westbrook, particularly with reference to speed and the manner in which Mrs. White proceeded into Knight Street. He placed the point of impact of the two vehicles approximately in the center of the intersection of the access road with Knight Street. Wilson testified that he did not observe Mrs. White until she was almost stopped in the neutral ground, going about two miles per hour, and that he thought she was stopping to let the motorcycle pass. He was of the opinion George also thought this, for he then accelerated. Wilson placed the point of impact slightly left and west of the center of the intersection.
Within a short time after the collision Earl Weaver and Williams H. Tynes, state police officers, appeared and made an official investigation. Weaver fixed the point of impact as being four feet from the north edge of the service road and approximately opposite the center of Knight Street. His reason for doing this was because of finding the motorcycle lying at that point and under it there was a pool of oil. He also saw nearby some small pieces of glass. There were no tire tracks nor a sufficient quantity of debris to seemingly substantiate this conclusion. The officer made no allowance for any movement of the motorcycle after its impact with the automobile. Mrs. White testified the back of her car was knocked sideways some five feet and came to rest about fifty feet north of the approximate point of collision. Mrs. White also testified that at the time her vehicle was struck, the front seat was even with the north line of the service road. Assuming the length of the car as being seventeen feet, the testimony of Mrs. White is in conflict with that of the three boys on the motorcycle who placed the point of impact nearer the center of the intersection.
Counsel for appellees takes the position that at the time Mrs. White began to enter the intersection the motorcycle was more than three hundred feet distant. The estimations of distance between their respective vehicles by Mrs. White and Westbook were undoubtedly erroneous. For instance, Mrs. White testified that when she made her right turn into the opening in the neutral ground, she was about one thousand feet distant from the point of collision. This distance would hardly be more than seventy-five feet. Westbrook, on one occasion estimated that the same distance was about twenty-five feet. If the testimony of either was true, there would have been no accident. Officer Weaver stated that immediately after the accident Westbrook told him the motorcycle was about forty-five feet from the point of impact when Mrs. White began to enter the access road. This seems to be a more accurate statement. While it is difficult to reconcile the testimony of these witnesses with facts, the evidence, in our opinion does disclose that the motorcycle was within a hundred feet of the intersection before Mrs. White began to enter the service road from the opening in the neutral ground.
The appellees charge that young Westbrook was guilty of negligence which contributed to the accident in a number of respects, but principally the defense is predicated on allegations of excessive speed and failure of the driver to operate the motorcycle under proper control. A further argument is that if Westbrook had turned his vehicle to the right he could have avoided the accident, but he took no steps to avoid striking the automobile.
*838 The testimony does not indicate Westbrook was driving his motorcycle in excess of thirty-five miles per hour, which does not appear to have been excessive under the circumstances. His explanation for not reducing the speed of his vehicle was that Mrs. White appeared to bring her vehicle to a stop for the purpose of yielding the right-of-way. This caused him to accelerate after having slackened the speed of his vehicle, and that after he had so accelerated his motorcycle, Mrs. White suddenly accelerated the speed of her automobile and attempted to pass through the intersection ahead of him at a time when it was too later for him to avoid the collision, which he did attempt to do without avail.
It is our finding, after consideration of all the evidence, that the sole and proximate cause of the accident was the failure of Mrs. White to notice or observe the presence of the boys on the motorcycle. There was no reason why she could not have seen them if she had looked and it is our conviction that had she looked she would not have attempted to cross in front of them. We find that young Westbrook was not negligent in the operation of his motorcycle.
Counsel for defendants has invited our attention to a decision by the Orleans Court of Appeal, Keystone Automobile Club Casualty Co. v. Indemnity Ins. Co. of North America, 1960, 117 So.2d 308, which case, it is contended, is on all fours with the instant case. Several factual circumstances distinguish the cited case. There it was held that where a motorist stopped at an intersection not controlled by traffic signs, and nothing was in the range of his vision which extended one hundred feet into the intersecting street, the motorist had a right to assume that any automobile out of his range of vision would be moving at a lawful speed and in a prudent manner, and consequently when he entered the intersection he was not contributorily negligent upon colliding with an automobile entering the intersection at an excessive rate of speed and in disregard of the motorist's right-of-way. The collision occurred when Joseph L. Aiena, Jr. was driving a Ford automobile along Toulouse Street at a speed of thirty miles per hour in a twenty mile per hour speed zone; that he was approximately two hundred feet removed from the intersection when the vehicle operated by Rev. M. Roth drove to the intersection of N. Hennessy Street with Toulouse Street, where he paused momentarily and then continued into the intersection and the collision occurred. In the instant case we find Westbrook was not violating the speed laws and was within one hundred feet of the point of impact when Mrs. White began to enter the intersection. These facts are sufficient to distinguish the two cases.
Appellees argue that Mrs. White was favored by being accorded the right-of-way under the provisions of LSA-R.S. 32:237, A, and further, it is contended that as she had proceeded slightly more than one-half way across the intersection she had gained the right of pre-emption. In our opinion the contentions are not sound. The facts show Knight Street dead ends where it enters the service road on the north side, and at the southwest corner of the entrance a stop sign halts southbound traffic. Northbound traffic can enter Knight Street only from the service road or by crossing through the neutral ground which separates the service road from the main portion of the highway. In this instance Mrs. White was merely proceeding to turn through the neutral ground, cross the service road and then enter Knight Street. Upon emerging from the neutral ground we think Mrs. White should have yielded to traffic proceeding on the service road. The provisions of LSA-R.S. 32:237, A, therefore, seem inapplicable. The oft-repeated rule of pre-emption is:
"The right of pre-emption is not accorded the driver who blindly enters a favored street, without regard to oncoming traffic, and then attempts to absolve himself of liability because * * * he was there first." Sonnier v. United *839 States Fidelity & Guaranty Co., La.App. 1 Cir., 79 So.2d 635, at page 638.
The circumstances show Mrs. White was not entitled to proceed across the service road ahead of the motorcycle for obviously it was too near for her to cross in safety.
There can be no serious dispute as to the injuries sustained by George Westbrook. Dr. Ray E. King, orthopedist, described the injury to Westbrook's right upper leg as being a comminuted fracture in the middle third of the right femur, which means the bone was entirely broken in two and an additional piece of bone had come apart from the two separated pieces. Surgery required an intermedullary rod to be placed inside the bone to hold the fragments in position. This rod was approximately eighteen inches in length and will require an additional operation to obtain its removal. Westbrook remained in the hospital for approximately two weeks and the right leg was placed in a cast for several months. His recovery has been uneventful and Dr. King testified he anticipates no residual disability although a second operation would be necessary to remove the intermedullary rod. This operation is scheduled to take place in January of 1960 at a cost of $500. Bruises and contusions were also received but were not of a serious nature. Plaintiffs' medical expenses, inclusive of the operation for removal of the rod, amounted to $1,513.52. In addition thereto plaintiffs claim damages for repairs to the motorcycle, $283.62; loss of school semester, $1,702.86, and $6,000 for pain and suffering.
The evidence revealed that the cost of repairing the motorcycle which appears to have been owned by young Westbrook, would amount to as much as its value, and for this reason it was sold for the sum of $75. We think, therefore, that the amount of recovery should be the amount of the repairs, $283.62 subject to a credit of $75, or the sum of $208.62. Plaintiffs have failed to substantiate damages as the result of the loss of school semester. For pain and suffering resulting from injuries sustained by George Westbrook, we allow the sum of $3,500.
For the reasons hereinabove set forth the judgment from which appealed is reversed and it is now ordered that there be judgment in favor of Henry L. Boyd and Mrs. Henry L. Boyd, and against W. Reagan White, Sally J. White and the Indemnity Insurance Company of North America, in solido, in the sum of $1,513.52 and interest from judicial demand until paid. It is further ordered, adjudged and decreed that there be judgment in favor of Mrs. Henry L. Boyd for the use and benefit of the minor, George Westbrook, and against W. Reagan White, Sally J. White and the Indemnity Insurance Company of North America, in solido, in the sum of $3,708.62 with interest of five per cent per annum until paid. It is further ordered that the expert witness fee of Dr. Ray E. King be fixed at the sum of $50. All costs, including cost of this appeal, are to be taxed against defendants.

On Rehearing
AYRES, Judge.
For reconsideration of the defendant surety's contractual liability, a rehearing was granted.
Counsel for the defendant insurer, in their application for a rehearing, as well as in a brief filed in support thereof, called attention to the fact that the insurance policy sued upon was not introduced or filed in evidence but that its recital of coverage was contained in a stipulation filed in lieu of the policy. It was therein stipulated that the insurer's limit of liability for injuries to one person was in the sum of $5,000. The pleadings contained no admission as to the policy's coverage of property damage. Neither was any stipulation made nor proof offered in that regard.
In accordance with the general rules which relate to the burden of proof in other *840 civil actions on contracts, the burden in an action on an insurance contract is on a plaintiff to establish every fact in issue which is essential to his cause of action or right of recovery, including the existence of the policy sued upon, its terms and provisions, and that his claim is within its coverage.
For recovery, reliance is made entirely upon the aforesaid stipulation which, as stated, makes no reference to coverage for property damage. We can only conclude that plaintiffs have not sustained their burden of proof so as to entitle them to recover of the surety the property damage sustained to the minor's motorcycle.
Our decree on original hearing awarded judgment in favor of plaintiffs, husband and wife, in the sum of $1,513.52, and, in the wife's favor, for the use and benefit of her minor son, $3,708.62, inclusive of property damage to the son's motorcycle of $208.62. All defendants were cast, in solido, for the aggregate sum of $5,222.14. However, for the reasons stated, the extent of the surety's liability is $5,000. Therefore, our original decree should be recast.
For the reasons hereinabove assigned and for the reasons set forth in our original opinion, the judgment appealed is annulled, avoided, reversed and set aside; and
It is now ordered, adjudged and decreed there be judgment in favor of the plaintiffs, Henry L. Boyd and Mrs. Henry L. Boyd, against W. Reagan White, Sally J. White, and the Indemnity Insurance Company of North America, in solido, for the full sum of $1,500, and further judgment in favor of said plaintiffs against the defendants, W. Reagan White and Sally J. White, in solido, for the additional sum of $13.52, with legal interest upon both of said sums from judicial demand until paid; and
It is further ordered, adjudged and decreed there be judgment in favor of Mrs. Henry L. Boyd for the use and benefit of her minor son, George Westbrook, and against W. Reagan White, Sally J. White, and the Indemnity Insurance Company of North America, in solido, for the full sum of $3,500; and further judgment in favor of the plaintiff, Mrs. Henry L. Boyd, for the use and benefit of her minor son, George Westbrook, against W. Reagan White and Mrs. Sally J. White, in solido, for the additional sum of $208.62, with legal interest upon both of said sums from judicial demand until paid.
It is further ordered, adjudged and decreed that the defendants pay all costs, including the cost of this appeal; and that our original decree, as herein recast, be and it is hereby reinstated and made the final judgment of this court.
Original decree recast and reinstated. *865