EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Iris Díaz Ayala, et al.<br>    Demandante-Recurrida<br><br>          v.<br><br>Estado Libre Asociado de P.R.;<br>Departamento de Salud, et al.<br>    Demandados<br><br>          v.<br><br>HMCA Carolina, Inc., et al.;<br>Evanston Insurance Company<br>    Peticionaria | Certiorari<br><br>2001 TSPR 40 |

Número del Caso: CC-2000-187

Fecha: 30/marzo/2001

Tribunal de Circuito de Apelaciones:
                         Circuito Regional VII

Panel integrado por su Presidente, Juez Guillermo Arbona Lago y los Jueces Andrés Salas Soler y Antonio J. Negroni Cintrón

Abogados de la Parte Peticionaria:
                         Lcdo. José Juan Torres Escalera
                         Lcdo. Steven C. Lausell Stewart

Abogados de la Parte Recurrida:
                         Lcdo. Rafael E. García Rodón
                         Lcdo. Alexis I. Avilés Vega
                         Lcdo. Pablo Rivera Díaz

Materia: Daños y Perjuicios

        Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Iris Díaz Ayala, et. al.

    Demandante-recurrida

        vs.

Estado Libre Asociado de P.R.;
Departamento de Salud, et. al.;

                CC-2000-187      CERTIORARI

    Demandados

        vs.

HMCA Carolina, Inc. et. al.;
Evanston Insurance Company

    Peticionaria


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ


San Juan, Puerto Rico, a 30 de marzo de 2001

El 23 de marzo de 1991, la Sra. Iris Díaz Ayala contrajo matrimonio con el codemandante, Sr. Enrique Mirabal González. Poco tiempo después, la Sra. Díaz Ayala quedó embarazada. La etapa prenatal del embarazo transcurrió sin mayores inconvenientes ni complicaciones de salud. En la madrugada del 21 de diciembre de ese mismo año, la Sra. Díaz comenzó a sentir síntomas de parto, por lo que, luego de informárselo a su esposo, éste la llevó al Centro de Diagnóstico y Tratamiento de Trujillo Alto. El médico de turno allí presente

procedió a referirla al Hospital de Area de Carolina. Ya en dicho lugar, fue examinada en sala de emergencia y de ahí trasladada a la sala de partos.[1]

Luego de varios análisis, la Dra. María del Carmen Ríos San Antonio, facultativa médica a cargo de la sala de partos, se percató de que había ocurrido la complicación de parto conocida como "prolapso del cordón umbilical", razón por la cual decidió de inmediato llevar a cabo una operación cesárea. Efectuada la misma, la bebé de la Sra. Díaz Ayala nació en condiciones estables. Al poco rato, la paciente sufrió un arresto cardiorrespiratorio y, a pesar de que los médicos lograron resucitarla, la falta de oxigeno provocada por tal condición, causó el que ésta sufriera una anoxia cerebral o encefalopatía anóxica irreversible[2].

De inmediato, la paciente fue trasladada en estado inconsciente a la unidad de cuidado intensivo de dicha institución, hasta ser finalmente trasladada al Hospital Universitario en el Centro Médico de Río Piedras. Iris Díaz Ayala permaneció inconsciente e incapacitada en el Hospital Universitario, hasta el día en que falleció a causa de una "encefalopatía post-parto", resultado de la falta de oxígeno provocada por el arresto cardiorespiratorio que sufrió al efectuársele la cesárea.

---

[1] A la fecha del parto, la Dra. María del Carmen Ríos San Antonio- codemandada- era la facultativa médica a cargo ("attending physician") de la sala de obstetricia y ginecología del Hospital de Area de Carolina. El Dr. Jorge Sánchez Castro -codemandado- era el médico residente de guardia en dicha institución hospitalaria. Ambos eran empleados del Recinto de Ciencias Médicas de la Universidad de Puerto Rico. A dicha fecha, la peticionaria, Evanston Insurance Company, era la aseguradora de la Universidad de Puerto Rico, en relación a una póliza de responsabilidad médico profesional. Véase Apéndice, págs. 4, 18. Determinaciones de Hecho y Conclusiones de Derecho, Tribunal de Primera Instancia.

[2] Anoxia es una "situación en la que los tejidos orgánicos reciben una cantidad reducida de oxígeno". Diccionario Médico Teide, Editorial Teide, Esp. 1988. Encefalopatía anóxica, se refiere a la condición de daño cerebral provocada por oxigenación deficiente en la respiración y circulación asociada con un paro cardíaco. Id.

Ya para el momento de la muerte de la paciente, ésta, representada por su esposo, Enrique Mirabal González, dos hijos de la paciente de un matrimonio anterior, la hija de ésta nacida el día de los hechos, y los padres de la paciente, habían entablado demanda en daños y perjuicios por mala práctica de la medicina[3], ante la Sala Superior de Carolina del Tribunal de Primera Instancia. Incluyeron como demandados a la Dra. Ríos San Antonio;  al Dr. Jorge Sánchez Castro, médico residente de guardia que atendió a la paciente en la referida institución hospitalaria; al Dr. Peter Portilla, anestesiólogo de turno y a la enfermera anestesista Minerva Carrasquillo, especialista que administró a la paciente la anestesia necesaria para llevar a cabo la operación cesárea. <u>Además, reclamaron daños y perjuicios a la Universidad de Puerto Rico como patrono de los doctores envueltos en la operación[4]</u>; al Hospital de Area de Carolina como patrono de la enfermera anestesista;  contra sus respectivas compañías aseguradoras, y contra el Estado Libre Asociado de Puerto Rico, entre otros demandados.

En dicha demanda, la parte demandante alegó, además de la causa de acción en daños por mala práctica de la medicina, "que las Compañías

---

[3] Demanda original, de 1 de diciembre de 1992, Demanda Enmendada de 24 de mayo de 1993, Segunda Demanda Enmendada de 13 de octubre de 1994 para incluir el hecho de la muerte de la Sra. Díaz Ayala.

[4] De acuerdo a la relación contractual existente entre la Universidad de Puerto Rico, la Administración de Facilidades y Servicios de Salud del Departamento de Salud y HMCA (Puerto Rico/Carolina), Inc., la Universidad de Puerto Rico se comprometió a proveer todo el personal médico necesario para dirigir y prestar los servicios médicos de los departamentos clínicos del Hospital de Area de Carolina. La Universidad de Puerto Rico era la encargada de seleccionar y contratar la facultad médica de los departamentos clínicos, incluyendo el de obstetricia y ginecología y el de anestesia. Por su parte, HMCA(Puerto Rico/Carolina), Inc., era la responsable de proveer el personal paramédico y administrativo así como el equipo y facilidades en el Hospital de Area de Carolina.

Según los referidos acuerdos, los médicos que atendieron a Iris Díaz Ayala eran empleados de la Universidad de Puerto Rico. El personal de enfermería que intervino con ella eran empleados de la HMCA (Puerto Rico/Carolina). Veáse Determinaciones de Hecho y Conclusiones de Derecho del Tribunal de Primera Instancia. Apéndice a la pág. 354.

Aseguradoras X, Y, y Triple S, habían expedido pólizas a favor de los demandados cubriendo los riesgos y daños que se reclaman en este caso, las cuales en unión a todos los codemandados responden solidaria y mancomunadamente por los daños y perjuicios aquí reclamados". Posteriormente, radicaron una Demanda Enmendada, en la que incluyeron la misma reclamación en contra de las respectivas compañías aseguradoras, denominadas con nombres ficticios por la parte demandante desconocer sus verdaderos nombres.[5]

Así las cosas, la aquí peticionaria y codemandada, Evanston Insurance Company (en adelante, Evanston), compareció, voluntariamente, como aseguradora de la Universidad de Puerto Rico (en adelante UPR), radicando su Contestación a la Demanda Enmendada. En referencia a la alegación de la parte demandante, relativa a la responsabilidad de las respectivas compañías aseguradoras de los codemandados, Evanston específicamente alegó que "...se acepta que la codemandada aquí compareciente ha expedido una póliza de responsabilidad médico-profesional a favor de la codemandada Universidad de Puerto Rico con unos límites fijos de cubierta, por lo cual no responde legalmente por cantidad alguna en exceso de los referidos límites...".[6] Más adelante

---

[5] Párrafo 18 de la Demanda Enmendada; Regla 15.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 15.4,; "Cuando un demandante ignore el verdadero nombre de un demandado, deberá hacer constar este hecho en la demanda, exponiendo la reclamación específica que alega tener contra dicho demandado...".

[6] Párrafo 19 de la Contestación a la Demanda Enmendada. Luego de un examen minucioso de las respectivas alegaciones radicadas por las partes, entendemos que es de suma importancia señalar que la codemandada Evanston, hizo referencia en el párrafo diecinueve de su Contestación a la Demanda Enmendada a lo alegado por la parte demandante en el párrafo dieciocho de su Demanda Original, en lugar de hacer referencia a lo alegado por ésta en el párrafo diecinueve de la respectiva Demanda Enmendada. Por tal razón, en nuestro deber de examinar las alegaciones presentadas por las partes mediante un análisis de la totalidad de los documentos que obran en el expediente, procedemos a tomar como respuesta de Evanston a la alegación de responsabilidad de las

en dicho documento, Evanston alegó, <u>afirmativamente</u>, lo mismo que levantó al contestar la alegación correspondiente de la parte demandante referente a la responsabilidad de las aseguradoras, esto es, que "<u>la codemandada Evanston Insurance Company ha expedido una póliza de responsabilidad médico-profesional a favor de la codemandada Universidad de Puerto Rico con unos límites fijos de cubierta y no es legalmente responsable por cantidad alguna en exceso de dichos límites</u>."[7]

Luego de varios trámites procesales, el tribunal de instancia dictó sentencia el día 17 de agosto de 1995, archivándose en autos copia de la misma el día 31 de agosto de 1995. Dicho foro determinó que tanto la Dra. Ríos San Antonio como el Dr. Sánchez Castro, ambos actuando como empleados del Recinto de Ciencias Médicas de la Universidad de Puerto Rico al momento de los hechos, fueron negligentes en la atención y tratamiento médico que brindaron a la paciente Iris Díaz Ayala. Concluyó, además, que la demandada HMCA (Puerto Rico/Carolina), Inc., fue negligente al carecer del personal y del equipo adecuado para administrar anestesia. De otra parte, también llegó a la conclusión de que el Hospital de Area de Carolina respondía, en virtud de lo dispuesto en el Artículo 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5142, por la negligencia de la anestesista Minerva Carrasquillo.

El foro de instancia dispuso, además, que la negligencia de los médicos empleados de la UPR contribuyó en un cincuenta por ciento (50%) a ocasionar los daños sufridos por los demandantes y que, por su parte, la imprudencia de los empleados de HMCA contribuyó en el otro cincuenta por ciento (50%) a la producción de los mismos. Finalmente, impuso <u>responsabilidad solidaria</u> a todos los codemandados, <u>incluyendo a la aseguradora compareciente Evanston</u>, por una cantidad total de seiscientos veinticinco mil dólares ($625,000.00) que estimó fue la

---

aseguradoras, lo expresado por ésta en el párrafo diecinueve de su Contestación a la Demanda Enmendada.

[7] Contestación a Demanda Enmendada, defensa afirmativa núm. 9; Apéndice a la pág. 114.

cantidad monetaria equivalente a los daños ocasionados y sufridos por los demandantes a causa de los actos negligentes de los codemandados.

Inconforme con la sentencia que el 17 de agosto de 1995 emitió el foro de instancia, Evanston presentó oportuna Moción de Reconsideración y/o de Enmiendas o Determinaciones de Hechos Iniciales o Adicionales, al amparo de la Reglas 47 y 43.3 de Procedimiento Civil, 32 L.P.R.A Ap. III, R. 47, R.43.3, respectivamente[8]. En la misma, alegó que la determinación del Tribunal de Primera Instancia fijando en seiscientos veinticinco mil dólares ($625,000.000) la cantidad de dinero que venía obligada a indemnizar de manera solidaria a la parte demandante, fue errónea. Esto, por razón de que la parte demandante no había descargado su obligación procesal de establecer, vía presentación de evidencia suficiente, que dicha aseguradora había expedido una póliza de responsabilidad médico-profesional que cubriera específicamente los hechos que dieron margen a la causa de acción reclamada en la demanda.

Argumentó Evanston, además, que el tribunal podía hacer uso de su discreción y permitirle, según la doctrina establecida por este Tribunal en el caso U.S. Fidelity & Guaranty Co. v. Tribunal Superior, 85 D.P.R. 131 (1962)[9], en esa etapa de los procedimientos posteriores a la

---

[8] La Regla 47 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que "La parte adversamente afectada por una resolución, orden o sentencia del Tribunal de Primera Instancia podrá, dentro del término de quince (15) días desde la fecha de la notificación de la resolución u orden o desde la fecha del archivo en los autos de una copia de la notificación de la sentencia, presentar una moción de reconsideración de la resolución, orden o sentencia...".

La Regla 43.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que "....a moción de parte, presentada a más tardar diez (10) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes,... o podrá enmendar o hacer determinaciones adicionales...".

[9] "Cuando un tribunal dicta sentencia contra un asegurado, si el monto de la misma es superior al límite de la póliza de seguros, el tribunal sentenciador tiene discreción para admitir prueba por vía de reconsideración, mediante cualquier otra moción procedente, con el fin de

sentencia, presentar en evidencia la póliza de seguros por responsabilidad médico-hospitalaria que había emitido a favor de la codemandada UPR, con el propósito de demostrar que la susodicha póliza era una de las que comúnmente se denomina "defense within limits".[10] La peticionaria Evanston pretendía, además, presentar evidencia que reflejara que durante todo el proceso judicial, el límite original de cubierta, se había ido agotando debido al pago de gastos, transacciones y reclamaciones contra la misma, y que para la fecha en que se dictó sentencia, la póliza estaba completamente agotada.[11] Incluso, alegó que, como aseguradora, no venía obligada a pagar ninguna suma en exceso de los límites acordados en la obligación que contrajo con la asegurada ya que las aseguradoras sólo responden dentro de los límites de la póliza. Código de Seguros, Artículos 20.010, 20.030, 26 L.P.R.A. secs. 2001, 2003; Clínica Dr. Perea v. Hernández Batalla, 85 D.P.R. 767 (1962).

Por su parte, la demandante se opuso a tal solicitud, amparándose en el hecho de que la codemandada peticionaria había aceptado desde el comienzo del caso, tanto en su contestación a la demanda enmendada como en las defensas afirmativas que alegó en la misma, que había expedido una póliza de responsabilidad médico profesional a favor de la UPR, la cual cubría los riesgos y daños reclamados en la demanda. Argumentó que, como consecuencia de tal aceptación, no tenía la obligación ni el deber de probar tal extremo en el juicio y que, por el contrario, le correspondía

---

establecer la suma por la cual responde la aseguradora." U.S. Fidelity, ante, pág. 134.

[10] Este tipo de póliza se caracteriza por el hecho de que el límite de responsabilidad de la aseguradora se va reduciendo según se pagan honorarios de abogado y otros gastos originados por la investigación y defensa de las reclamaciones que se hagan dentro del período de vigencia de la póliza.

Véase, además, U.S. Fidelity & Guaranty Co. v. Tribunal Superior, 85 D.P.R. 131 (1962)., referente al uso de discreción del Tribunal para permitir presentación de evidencia, relativa a los límites de una póliza, mediante la utilización de los procedimientos posteriores a la sentencia.

[11] Véase Resolución del Tribunal de Primera Instancia, Apéndice a la pág. 296.

a dicha aseguradora demostrar y probar fehacientemente la defensa afirmativa que alegó al efecto de que la póliza que había expedido era una con unos límites fijos de cubierta; cosa que la codemandada no hizo en ningún momento durante los procedimientos pertinentes al juicio.

Cuestionó, además, la parte demandante el uso que pretendía darle Evanston a la moción de reconsideración para presentar evidencia que estableciera los límites de responsabilidad, luego de haberse dictado sentencia, cuando dicha parte tuvo amplia oportunidad para hacerlo antes de que se dictara la misma. La parte demandante específicamente solicitó del foro de instancia que determinara que la parte codemandada Evanston no había presentado prueba sobre los límites de la póliza de responsabilidad médico hospitalaria que aceptó haber emitido a favor de la codemandada Universidad de Puerto Rico, por lo que, no teniendo el Tribunal ante sí, prueba alguna sobre los límites de responsabilidad de Evanston, se podía concluir que ésta, como codemandada solidaria, le fuera responsable a la Parte Demandante en el pago de las cantidades concedidas, incluso más allá de los límites de dicha póliza.[12]

El tribunal de instancia, luego de examinar los argumentos en apoyo y en oposición a la solicitud de reconsideración, denegó la misma. Resolvió que, aún cuando es al que le reclama a un asegurado a quien le corresponde establecer que la acción u omisión que da lugar a la causa de acción reclamada está cubierta por un contrato de seguro[13], esto se logró mediante la propia admisión que hizo Evanston en su contestación a la demanda y en las defensas afirmativas que levantó en tal documento. Llegó pues a la determinación de que, luego de Evanston haber aceptado la existencia de la póliza y la respectiva cubierta a favor de la UPR, le correspondía a dicha parte demostrar el límite de su responsabilidad. Como no lo hizo, pues ni siquiera ofreció en evidencia prueba documental

---

[12] Moción en Oposición a Reconsideración al amparo de la Regla 47 y Regla 43.3; Apéndice a la pág. 176-177.

[13] Véase: U.S. Fidelity & Guaranty Co. v. Tribunal Superior, 85 D.P.R. 131, 133 (1962);(citando a Boyd v. White, 123 So. 2d 835 (La. 1960); Masaracchia v. Inter-City Express Lines Inc., 162 So. 2d 221(La. 1935), entre otros.

o testifical relativa al texto, límites y condiciones de la póliza, procedía entonces mantener la determinación previa del tribunal en cuanto a la imposición de responsabilidad en contra suya. Sostuvo que Evanston no podía pretender, mediante el uso de los procedimientos posteriores a la sentencia, que el tribunal le brindara la oportunidad de presentar evidencia que nunca presentó anteriormente, a pesar de haber estado disponible, y que, por consiguiente, la parte demandante nunca pudo refutar.

Inconforme con tal determinación, Evanston acudió mediante recurso de apelación al Tribunal de Circuito de Apelaciones (en adelante, Tribunal de Circuito), el cual confirmó la sentencia dictada por el foro de instancia.[14] El tribunal apelativo intermedio basó su decisión en el hecho de que Evanston nunca demostró en el juicio cuales eran las condiciones de la póliza, ni tampoco presentó evidencia documental de la misma, por lo que, no era posible eximirla en esos momentos de la responsabilidad que asumió al contestar en la afirmativa que de hecho había expedido una póliza de tal tipo. Determinó que, según los señalamientos del foro de instancia, no existía controversia sobre la existencia de la póliza en cuestión porque los demandantes no tenían que probar lo que ya la aseguradora había aceptado. Señaló en su sentencia que la pretensión de Evanston de que no presentó dicha prueba por razón de que la demandante no había cumplido previamente con su deber de probar

---

[14] En dicho recurso, imputó al Tribunal de Primera Instancia la comisión de los siguientes errores:

"**Erró el Honorable Tribunal de Primera Instancia al imponer responsabilidad a Evanston dando por admitido la existencia de una póliza de seguros emitida por ésta y que la misma cubre la reclamación objeto de la demanda y, por consiguiente, relevando a la parte demandante de su obligación de probar lo anterior en el juicio;**

la existencia de la póliza, era inmeritoria. Específicamente determinó que, para imponer tal responsabilidad, era suficiente con leer de forma integral las aseveraciones y defensas incluidas en su contestación a la demanda para poder llegar a la conclusión de que Evanston era responsable por haber aceptado que expidió una póliza de responsabilidad médico profesional a favor de la UPR.[15]

El Tribunal de Circuito de Apelaciones determinó, además, que no era permisible utilizar la etapa apelativa ni los mecanismos procesales posteriores a la sentencia para presentar evidencia que la parte proponente tenía disponible para ofrecer, tanto durante el proceso judicial previo a la vista en su fondo como durante la celebración de la misma. Por consiguiente, señaló que el tribunal de instancia no abusó de su discreción al denegar la petición de Evanston relativa a la presentación de prueba sobre las condiciones de la póliza. Dicha parte era la que de hecho ejercía, durante todo momento, el poder y control sobre la presentación de prueba que en esa etapa de los procedimientos solicitaba presentar; esto es, que era la propia aseguradora quien tenía conocimiento de los contratos de seguro que otorga y el tipo de póliza que expide en caso de que se le imponga responsabilidad a un asegurado.[16]

---

> Erró el Honorable Tribunal de Primera Instancia al negarse a reconsiderar la sentencia y/o formular las correspondientes enmiendas o determinaciones iniciales o adicionales (Regla 43.3 de Procedimiento Civil) para conformarla a la cubierta disponible bajo la póliza al momento de dictarse sentencia."

---

[15] Véase Sentencia del Tribunal de Circuito de Apelaciones, Circuito Regional VII, Apéndice a la pág. 406.

[16] Dispuso el TCA que "...resulta del todo inaceptable que acojamos tal malabarismo jurídico para que en esta etapa apelativa le impongamos un límite de cubierta de seguro frente a los apelantes, cuando lo bien alegado por los demandantes-apelantes nunca fue contestado en la negativa por Evanston. Una alegación responsiva o defensa afirmativa que se limita a señalar que una póliza está sujeta a las cláusulas, condiciones y restricciones que de su faz aparezcan o una expresión sustancialmente similar no constituye negativa, cuando luego no se alega cual es el límite correcto de la póliza o se presenta copia de la cubierta del contrato de seguros." Íd.

Por no estar de acuerdo con la actuación del Tribunal de Circuito, Evanston presentó oportuna moción de reconsideración de la sentencia, alegando básicamente los mismos señalamientos. Dicha solicitud fue declarada no ha lugar por el foro apelativo sin más fundamentos, salvo una modificación debida a un error oficinesco.[17]

Luego de la denegatoria del foro apelativo intermedio de dicha moción de reconsideración, Evanston compareció ante este Tribunal, vía certiorari, en revisión de dicha sentencia. La referida peticionaria alega que procede revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones, por razón de que dicho foro apelativo erró al:

> "...negarse a revisar y a revocar la sentencia del Tribunal de Instancia que impuso responsabilidad a la aseguradora Evanston basado en un admisión inferida 'de una lectura de forma integral y armónica, en armonía' (Apéndice, pág. 406) de todas las aseveraciones y defensas incluidas en las contestaciones de Evanston a las varias demandas y demandas enmendadas";

> "...negarse a revisar y a revocar la sentencia del Tribunal de Instancia, el cual se negó, abusando de su discreción, a permitir que Evanston, vía oportuna moción de reconsideración y de determinaciones de hecho adicionales, presentara, luego del juicio, evidencia de los límites de la póliza al momento de dictarse sentencia."

Expedimos el recurso; contando con el beneficio de la comparecencia de las partes y estando en condiciones de resolver, procedemos a así hacerlo.

I

La parte demandada-peticionaria, Evanston, señala que la imposición de responsabilidad en su contra es improcedente en derecho por razón de que la parte demandante nunca presentó, durante el juicio celebrado, prueba alguna que demostrara el hecho de que ésta había expedido una póliza de responsabilidad médico-profesional que cubriera los hechos específicos que dieron lugar a la causa de acción reclamada en la demanda. Sostiene que los dos foros apelados actuaron erróneamente

---

[17] Véase Apéndice a la pág. 438. Se modificó la sentencia para hacer constar que la compensación concedida a Enrique Mirabal González era por una suma de veinte mil dólares ($20,000.00),

al tomar las aseveraciones hechas por la demandada-peticionaria, en sus alegaciones, como base para imponerle responsabilidad y determinar que no le correspondía a la parte demandante establecer y probar el hecho de que la demandada-peticionaria había suscrito un contrato de seguros a favor de la UPR que cubriera la causa de acción en cuestión. Sostiene Evanston, además, que fue un error imponerle la responsabilidad de indemnizar, de manera solidaria, el pago total de la sentencia por razón de que, alegadamente, no cumplió con su peso de la prueba para establecer que la póliza objeto de la controversia estaba sujeta a uno límites fijos de cubierta.

**A**

Por razón de la importancia, alcance y efecto que tienen los contratos de seguro en Puerto Rico, en especial, aquellos que regulan la responsabilidad profesional por mala práctica de la medicina, procedemos, previo a discutir el primer señalamiento de error, a realizar un breve análisis sobre la definición, naturaleza e interpretación que le ha dado este Tribunal, a las distintas disposiciones que reglamentan este tipo de pólizas contractuales.

El Artículo 1.020 del Código Seguros de Puerto Rico, 26 L.P.R.A sec. 102, define el contrato de seguro como aquel "mediante el cual una persona se obliga a indemnizar a otra o a pagarle o proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo." Cruz, Rolando, _Derecho de Seguros_, 1ra ed., Publicaciones JTS, 1999, pág. 1. Un contrato de seguro, por responsabilidad profesional médico-hospitalaria, constituye una cubierta de seguro, para profesionales e instituciones para el cuidado de salud, que tiene el propósito de indemnizar a terceros por los actos u omisiones culposos o negligentes de los asegurados mientras ejercen sus funciones y proveen sus servicios en tal capacidad profesional.[18] Es decir, protege al

_____

en lugar de los doscientos mil dólares ($200,000.00) que se hicieron constar en la sentencia.

[18] _Id_., Glosario de los términos más comúnmente usados en el campo del Derecho de Seguros, págs. 394, 410.

asegurado contra la responsabilidad legal de éste por los daños o lesiones causadas a terceras personas como consecuencia del rendimiento negligente de sus servicios profesionales.[19]

Estos contratos, comúnmente conocidos como de impericia o mala práctica, "tienen como fin primordial 'garantizar al asegurado contra la responsabilidad civil en que pueda incurrir ante terceros por actos de los que sea [legalmente] responsable', Quiñones López v. Manzano Pozas, res. el 25 de junio de 1996, 141 D.P.R. ___, (1996)[20]; Meléndez Piñero v. Levitt & Sons of Puerto Rico Inc., 129 D.P.R. 521, 537 (1991). Por medio de tal contrato, "el asegurador se obliga, dentro de los límites establecidos en el contrato, a cubrir la obligación de indemnizar a un tercero los daños y perjuicios causados por el asegurado. Como puede suponerse, sin embargo, en la práctica no existe un seguro que cobije toda la responsabilidad en que puede incurrir una persona. Lo que existe son seguros de responsabilidad civil que cubren determinadas actividades del asegurado, capaces de producir daños. Entre los más conocidos figuran...los seguros de responsabilidad profesional concernientes a los perjuicios ocasionados a otros en el desempeño de una profesión: medicina, abogacía, arquitectura, etc." Quiñones López v. Manzano Pozas, ante.[21]

Es norma reiterada de este Tribunal que todo contrato de seguros, al igual que cualquier otro contrato, constituye la ley entre las partes, siempre y cuando concurran las tres condiciones indispensables para su validez: consentimiento de los contratantes, objeto cierto materia del contrato, y causa de la obligación que se genera. Artículos 1230, 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 3451, 3391, respectivamente; General Accident v. Ramos Díaz, res. el 14 de junio de 1999, 99 TSPR 91; Quiñones López v. Manzano Pozas, ante; José Iván Torres

---

[19]  Id., a la pág. 396.

[20]  J. Castelo Matran, Diccionario Mapfre de Seguros, Editorial Mapfre, 1988, pág. 264.

v. <u>E.L.A.</u>, 131 D.P.R. 640 (1992); <u>García Curbelo</u> v. <u>A.F.F.</u>, 127 D.P.R. 747 (1991).

Por su parte, el Código de Seguros dispone que todo contrato de seguros deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza. Código de Seguros, Artículo 11.250, 26 L.P.R.A. 1125.[22] Debe mantenerse presente que, en caso de duda en la interpretación de una póliza, la misma debe resolverse de manera que se logre el objetivo y propósito de la misma: proveer protección al asegurado. <u>Quiñones López</u>, ante. De ahí que no se favorezcan las interpretaciones sutiles que le permitan a las compañías aseguradoras evadir su responsabilidad. <u>Id</u>. Es por ello que corresponde a los tribunales buscar y analizar el sentido y significado que le daría una persona normal de inteligencia promedio a las palabras y cláusulas contenidas en un contrato de dicha naturaleza. <u>Id</u>.; <u>PFZ Properties Inc.</u> v. <u>General Accident Ins. Co.</u>, 136 D.P.R. 881 (1994).

En síntesis, cuando los términos, condiciones y exclusiones de un contrato de seguros son claros y específicos, deben hacerse valer los mismos de acuerdo a la voluntad de las partes contratantes. <u>Quiñones López</u>, ante.

B

Atendemos el primer señalamiento de error levantado por la peticionaria: como mencionáramos previamente, Evanston sostiene que el TCA estaba impedido de confirmar la determinación del TPI imponiéndole responsabilidad a ésta por el pago de la sentencia, basada dicha imposición en la alegada admisión inferida de la existencia de la póliza que Evanston proveyó en la contestación a la demanda.

La Regla 5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 5, nos habla sobre las alegaciones permitidas en nuestro ordenamiento procesal civil; entre ellas la demanda y su respectiva contestación. La Regla 6.1,

---

[21] Véase <u>Meléndez Piñero</u> v. <u>Levitt & Sons of Puerto Rico Inc.</u>, ante, a la pág. 537; nota al calce núm. 3.

[22] Véase, además, <u>Stokes</u> v. <u>Serrano Lecaroz</u>, res. el 24 de abril de 1998, 98 TSPR 49; <u>Meléndez Piñero</u> v. <u>Levitt & Sons</u>

**32 L.P.R.A. Ap. III, R.6.1, por su parte, establece, en síntesis, que las alegaciones que expongan una solicitud de remedio, entre éstas, la demanda, presentarán una relación sucinta y breve de lo que se reclama y la solicitud del remedio que alega se le debe conceder.**[23]

**De otro lado, la Regla 6.2, 32 L.P.R.A. Ap. III, R. 6.2, dispone que: "La parte [a quien se le reclama] expondrá en términos sucintos y sencillos sus defensas contra cada reclamación interpuesta y admitirá o negará las aseveraciones en que descanse la parte contraria..." (subrayado nuestro).**

**Sobre el efecto de las aseveraciones contenidas en las alegaciones antes mencionadas, y el alcance que tienen las admisiones manifestadas en las mismas, la jurisprudencia de este Tribunal ha señalado que las admisiones del demandado, en su contestación, relevan al demandante de tener que probar los hechos así admitidos. El demandante no tiene que presentar prueba sobre hechos no negados, o admitidos, en la contestación, y esos hechos deben ser considerados como ciertos.**[24]

**De igual manera, Ernesto L. Chiesa, en su Tratado de Derecho Probatorio,**[25] **Tomo II, pág. 655, nos señala, al hacer una distinción entre las admisiones evidenciarias para fines probatorios, y las admisiones judiciales, tales como las que hace una parte en el transcurso de un proceso civil al contestar una demanda o estipular unos hechos, que éstas**

---

of Puerto Rico Inc., ante; García Curbelo v. A.F.F., ante; Torres v. E.L.A., ante.

[23] Urrutia de Basora, Negrón Portillo, Reglas de Procedimiento Civil de Puerto Rico; Preguntas y Respuestas, Facultad de Derecho de la Universidad Interamericana de Puerto Rico, 1996, pág. 42.

[24] Véase: Torres v. Soc. Tranvía de Mayagüez, 18 D.P.R. 251, 252 (1912); García v. Torres, 20 D.P.R. 169, 172-173 (1914); Santini Fertilizer Co. v. Burgos, 34 D.P.R. 869 (1926); Cayere v. Buxó, 62 D.P.R. 910 (1944); Abella v. Piñeiro, Gobernador, 66 D.P.R. 693, 694-695 (1946); Mariani v. Christy, 73 D.P.R. 782, 788-789 (1952). Véase, además, José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo I, 1ra ed., Publicaciones JTS, 2000, pág. 209.

[25] Chiesa, Ernesto L. Tratado de Derecho Probatorio; Reglas de Evidencia de Puerto Rico y Federales. Tomo II, Publicaciones JTS, 2000.

<u>últimas no son controvertibles</u>. Es decir, "el efecto de admisiones judiciales, mucho más pleno, es materia estrictamente procesal. Sencillamente, cuando una parte hace una alegación o acepta una estipulación, queda obligada por la alegación salvo que el tribunal le permita retirarla." <u>Id</u>. De manera que, lo que las partes <u>aceptan</u> dentro del curso procesal de un caso civil, --i.e. en la contestación a la demanda, conferencia con antelación al juicio, estipulaciones-- es incontestable salvo que el Tribunal permita enmiendas a las mismas. <u>Id</u>.

Este Tribunal, al catalogar las estipulaciones de hechos como admisiones judiciales de la misma naturaleza a las discutidas en el párrafo anterior, ha expresado que "la estipulación es una admisión judicial que implica un desistimiento formal de cualquier contención a ella. Debe interpretarse liberalmente, de manera consistente con la intención de las partes y el propósito de hacer justicia...", <u>Ramos Rivera</u> v. <u>E.L.A.</u>, res. el 16 de abril de 1999, 99 TSPR 57; <u>Puerto Rico Glass Corp.</u> v. <u>Tribunal Superior</u>, 103 D.P.R. 223, 230 (1975).

No se puede pasar por alto que las admisiones de las partes facilitan la tramitación de los casos, pues las mismas relevan a la parte que la obtuvo de tener que probar ese hecho.[26] Siempre hemos reiterado que el fin y propósito del ordenamiento procesal civil, y de sus respectivas reglas sobre las alegaciones, es "delimitar la controversia mediante la aceptación por el demandado de todo lo que sea cierto...". Cuevas Segarra, ante, pág. 210.

La peticionaria Evanston alega que, de sus alegaciones, no surge que haya aceptado o admitido ser la aseguradora que cubría la reclamación presentada en contra de la codemandada UPR. Dicho de otra manera, Evanston alega que para imponerle responsabilidad no era suficiente con establecer la existencia de una relación asegurado/aseguradora, --que, alegadamente, fue lo único que ella expresó en la contestación a la demanda-- por lo que era necesario que la parte demandante estableciera

---

[26] Rafael Hernández Colón, <u>Práctica Jurídica de Puerto Rico</u>, San Juan, Puerto Rico, Ed. Michie of P.R., Inc. (1997). Caps. 28-31, págs. 220-245.

que dicha póliza existente cubría los hechos específicos por los cuales se le reclamaba a su asegurado, --i.e. fecha de los hechos, naturaleza de los mismos a la luz de la póliza, etc. <u>Su contención, a este respecto, es frívola</u>.

Como expresáramos en la relación de los hechos, y según surge de la contestación a la demanda, Evanston expresamente aceptó haber expedido una póliza de responsabilidad médico-profesional a favor de la codemandada UPR. Es correcto que una lectura de la fraseología utilizada por Evanston --en las dos ocasiones señaladas-- revela una ausencia de terminología a los efectos de que "aceptaba" que la ocurrencia alegada en la demanda era una <u>cubierta</u> por dicha póliza; Evanston meramente se limitó a aceptar que ella había "expedido una póliza de responsabilidad médico-profesional a favor de la codemandada Universidad de Puerto Rico...".

<u>No</u> es menos cierto, sin embargo, que una <u>lectura integral</u> de la contestación a la demanda revela que Evanston asumió una <u>posición clara</u> respecto a que la póliza de responsabilidad médico-profesional por ella expedida, efectivamente cubría el riesgo u ocurrencia al que se refería la demanda radicada. A esos efectos, véase: los párrafos cuarto (4), sexto (6), noveno (9), décimo tercero (13), décimo cuarto (14) y décimo diecinueve (19) de la mencionada Contestación. Véase, además: los párrafos tercero (3), cuarto (4), quinto (5) y noveno (9) de las "defensas afirmativas", presentadas por Evanston en su "Contestación a la Demanda Enmendada".

Si así no hubiera sido, el deber de la peticionaria era ciertamente negar cubierta cuando contestó la demanda y cuando levantó sus defensas afirmativas. La Regla 6.4, 32 L.P.R.A. Ap. III, R. 6.4, sobre las consecuencias de no negar, establece claramente que "las aseveraciones contenidas en cualquier alegación que requiera una alegación respondiente y que no se refieran al monto de los daños, se tendrán por admitidas si no se negaren en la alegación respondiente...".

Ciertamente, la peticionaria Evanston <u>nunca</u> negó que había expedido la póliza en cuestión, como tampoco negó que la ocurrencia o

incidente, al que se refería la demanda, estuviera cubierta por dicha póliza. Ni en su contestación a la demanda, ni en ningún momento posterior, la aseguradora peticionaria cuestionó la alegación esencial relativa a la existencia del contrato de seguros y a su cubierta referente a los riesgos y daños que se reclamaban, razón por la cual debe considerarse admitida. "Una alegación esencial queda admitida cuando el demandado no controvierte dicha alegación en su contestación a la demanda." Berríos Pagán v. Universidad de Puerto Rico, 116 D.P.R. 88, 95 (1985); Pascual v. Fernández Sierra, 108 D.P.R. 426, 430 (1979).

Por otro lado, la Regla 6.3 de Procedimiento Civil[27], establece lo referente a las distintas defensas afirmativas que la parte demandada puede levantar al responder a una alegación precedente. Son defensas que principalmente comprenden materia de naturaleza sustantiva y/o materia constitutiva de excusa por la cual la parte demandada no deba responder a las reclamaciones instadas en su contra. Estas deben plantearse al responder a una alegación precedente o se entienden renunciadas; deben además ser alegadas en forma clara , expresa y específica. Cuevas Segarra, ante, pág. 212; Ortiz Díaz v. R & R Motors, 131 D.P.R. 829 (1992).

No deber haber duda respecto al hecho de que, si la demandada-peticionaria no era la aseguradora sobre la presente reclamación, era su deber, cuando menos, haberlo levantado como defensa afirmativa cuando sometió su escrito de contestación[28]. Por lo tanto, no puede negar ahora lo que ciertamente aceptó cuando contestó la demanda, ni puede pretender tratar de levantar defensas afirmativas que claramente renunció presentar en la etapa inicial del pleito. Evanston está obligada por la admisión judicial que hiciera: Véase: Ramos Rivera, ante; Coll v. Picó, 82 D.P.R. 27 (1960).

C

La peticionaria Evanston argumenta, en segundo término, que no venía obligada a presentar, durante el juicio, prueba o evidencia

---

[27] Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.6.3.

referente a los términos y condiciones de la póliza, por ella expedida a favor de la Universidad de PR, por razón que la parte demandante no presentó prueba sobre la existencia de la póliza. No obstante ser su planteamiento repetitivo, atendemos el mismo.

En U.S. Fidelity & Guaranty v. Tribunal Superior, ante, págs. 133, 134, expresamente establecimos que "es al que le reclama a un asegurado a quien le corresponde establecer que la acción u omisión que dio margen a la causa de acción ejercitada está cubierta por el contrato de seguro. Boyd v. White, 123 So.2d 835 (La. 1960). Establecido esto, le corresponde al asegurador demostrar el límite de su responsabilidad, Masaracchia v. Inter-City Express Lines Inc. et al., 162 So.2d 221 (La. 1935);[29] y, si así no lo hiciere se presume que el límite de su responsabilidad es suficiente para cubrir la suma reclamada en la demanda."

En el párrafo diecinueve de la demanda radicada en el caso de autos se alegó que las compañías aseguradoras de los codemandados habían expedido pólizas a favor de éstos cubriendo los riesgos y daños que se reclamaban en el caso. Como señaláramos y concluyéramos previamente, en la contestación radicada por la codemandada peticionaria Evanston, ésta admitió que había expedido una póliza de responsabilidad médico profesional a favor de la UPR, y alegó, afirmativamente que la misma tenía unos límites fijo de cubierta por lo que no respondía legalmente por cantidad alguna en exceso de los mismos.

No hay duda alguna de que bajo nuestro sistema de Derecho, la parte que sostiene la afirmativa de una cuestión es la llamada a ofrecer evidencia para probarla. Regla 10 de Evidencia, 32 L.P.R.A. Ap. IV, R.10. Ahora bien, como la contención de la demandante respecto a que las compañías aseguradoras habían expedido la póliza en controversia a favor de la codemandada UPR, fue admitida por la peticionaria, la parte

---

[28] Contestación de Demanda Enmendada, defensa afirmativa núm. 9. Apéndice, pág. 114.

[29] Citando a Fontenot v. Lloyds Casualty Insurer, 31 So.2d 290 (La. 1947); Massachusetts Protective Ass'n Inc. v. Fergojon, 121 So. 863 (La. 1929); Franz v. U. S. Casualty Co., 49 F. Supp. 267 (D.C.E.D. La. cir. 1943); Dostal v. St. Paul Mercury Indemnity Co., 89 N.W.2d 545 (Wis. 1958); 21 Appleman Insurance Law & Practice, § 12,095, 12,281 (ed. 1947); Cf. Pepin v. Ready Mix, 70 D.P.R. 758 (1950); Nichols v. U.S. Fidelity & Guaranty Co., 109 N.W.2d 137 (Wis. 1961).

**demandante quedó <u>relevada</u> de ofrecer prueba al efecto, <u>incumbiendo</u>**

**<u>entonces a la aseguradora presentar en evidencia la póliza por ella</u>**

**<u>expedida, acción con la cual automáticamente hubieran quedado</u>**

**<u>establecidos los términos y condiciones de la misma y que no se le podía</u>**

**<u>exigir responsabilidad legal en exceso de dichos límites</u>. Véase: <u>Pepín</u>**

**v. <u>Ready Mix</u>, 70 D.P.R. 758 (1949).[30]**

**D**

**Por último, la peticionaria Evanston alega que el Tribunal de Circuito**

**de Apelaciones erró al no revocar la determinación del tribunal de instancia,**

**denegatoria la misma de su solicitud para que se le permitiera presentar**

**evidencia sobre los límites de la póliza por ella expedida a favor de la**

**Universidad de Puerto Rico, luego de haberse dictado sentencia en el caso,**

**<u>a través del mecanismo procesal de la moción de reconsideración</u>. Evanston**

**aduce, como fundamento en apoyo de su posición, lo resuelto a esos efectos**

**por este Tribunal, en el caso de <u>U.S. Fidelity & Insurance Co.</u> v. <u>Tribunal</u>**

**<u>Superior</u>, ante.**

**En el referido caso, y luego de reafirmar la norma prevaleciente en**

**esta jurisdicción respecto al peso de la prueba en esta clase de**

**situaciones[31], este Tribunal expresó que:**

---

[30] "Conforme a lo dispuesto en la Ley de Evidencia de Puerto Rico, el peso de la prueba de una obligación corresponde a la parte que exige su cumplimiento, como lo sería el asegurado o reclamante exigiendo su derecho a ser indemnizado bajo un contrato de seguros. No obstante, si la compañía aseguradora negara cubierta o el derecho de indemnización al asegurado o reclamante..., el peso de la prueba le corresponde al asegurador que niega su obligación indemnizatoria". Cruz, Rolando. <u>Derecho de Seguros</u>, ante, a la pág. 386.

[31] En el caso citado se estableció que es al que reclama a un asegurador a quien le corresponde establecer que la acción u omisión que dio margen a la causa de acción ejercitada está cubierta por el contrato de seguro. Establecido esto, le corresponde al asegurador demostrar el límite de su responsabilidad, y si no lo hiciese se presume que el límite de su responsabilidad es suficiente para cubrir la suma reclamada en la demanda. El peso de la prueba lo deben tener el asegurado y su aseguradora que han admitido la existencia de la póliza, para establecer que sus términos son tales que

> "...se ha sostenido también que una vez dictada sentencia contra el asegurado, si el monto de la misma es superior al límite de la póliza, <u>el tribunal sentenciador tiene discreción para admitir prueba por vía de reconsideración</u>, o mediante cualquier otra moción procedente, <u>con el fin de establecer la suma por la cual responde la aseguradora</u>. (Citas omitidas.)
>
> En el caso de autos, como hemos visto, la compañía aseguradora no presentó prueba para dejar establecido el límite de su responsabilidad <u>ni aun después de haberse dictado sentencia en su contra</u>. Tratar de establecerlo al momento de satisfacer la sentencia, <u>que es final después de pasar por el trámite apelativo, es tardío</u>. Amplia oportunidad tuvo para hacerlo y optó por cruzarse de brazos hasta el momento mismo de ejecutar la sentencia." (Enfasis suplido.)

En el caso de autos, la aseguradora Evanston levantó, en la contestación a la demanda que radicara, que había "...expedido una póliza de responsabilidad médico-profesional a favor de la codemandada Universidad de Puerto Rico <u>con unos límites fijos de cubierta y no es legalmente responsable por cantidad alguna en exceso de dichos límites</u>." (Enfasis suplido.)

Si bien es cierto que, como se expresara anteriormente, Evanston <u>no</u> presentó en evidencia la póliza expedida durante el juicio, un examen de los autos revela que, en una audiencia sobre el "estado del caso"[32], <u>la representación legal de Evanston le informó a los abogados de la parte demandante que, la póliza por ella expedida a favor de la Universidad de Puerto Rico, era una cuyos límites iban agotándose paulatinamente</u>. La veracidad de la ocurrencia de dicha situación la <u>acepta</u> el tribunal de instancia en la resolución mediante la cual dicho foro denegó la moción de reconsideración.

Argumenta Evanston que toda esa situación fáctica hace que su solicitud a los efectos de que se le permitiera, vía reconsideración, presentar evidencia sobre los límites de la póliza es una meritoria y procedente. Sostiene, en consecuencia, que abusó de su discreción el foro de instancia

---

no le hacen responsable bajo la misma o que limitan su responsabilidad a una cantidad específica. El demandante no puede tener conocimiento cabal de todos los términos y condiciones de la póliza. En ausencia de tal prueba, debe sostenerse que la responsabilidad del asegurador es solidaria con la del asegurado.

[32] Conferencia sobre el "estado del caso", celebrada la misma el día 27 de septiembre de 1994.

al negarle esa oportunidad, todo ello conforme lo resuelto en <u>U.S. Fidelity</u> <u>& Guaranty Co.</u>, ante. <u>Tiene razón</u>.

En <u>primer</u> lugar, Evanston levantó en la contestación a la demanda que radicara la defensa de que <u>no</u> respondía más allá de los términos y límites de la póliza que había expedido. En <u>segundo</u> término, Evanston planteó el asunto verbalmente, en presencia del magistrado a cargo de los procedimientos, a los abogados de la parte demandante en una vista sobre el "estado del caso". <u>Por último</u>, reclamó una oportunidad para presentar evidencia sobre los límites de dicha póliza, vía reconsideración, <u>con</u> <u>anterioridad al momento en que la sentencia adviniera final y firme</u>, ello conforme a lo establecido en el citado caso de <u>U.S. Fidelity & Guaranty Co.</u>, ante.

Nos enfrentamos, en consecuencia, a una situación o planteamiento que ciertamente <u>no</u> puede ser catalogado como sorpresivo o nuevo <u>ni</u> para la parte demandante <u>ni</u> para el tribunal de instancia. Erró dicho foro al denegar la solicitud de Evanston, quien actuó en todo momento conforme la norma establecida por este Tribunal en <u>U.S. Fidelity & Guaranty Co.</u>, ante.

Procede, en consecuencia, decretar la revocación de la sentencia emitida por el Tribunal de Circuito de Apelaciones en el presente caso; <u>devolviéndose</u> el mismo al tribunal de instancia con instrucciones de que señale una vista en la cual le debe permitir a la peticionaria Evanston presentar evidencia sobre los términos y condiciones de la póliza expedida por dicha parte, luego de lo cual dicho foro deberá determinar la suma de dinero por la cual responde dicha compañía aseguradora ante la parte demandante.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**Iris Díaz Ayala, et. al.**

    **Demandante-recurrida**

        **vs.**

**Estado Libre Asociado de P.R.;**
**Departamento de Salud, et. al.;**
                           **CC-2000-187     CERTIORARI**

    **Demandados**

        **vs.**

**HMCA Carolina, Inc. et. al.;**
**Evanston Insurance Company**

    **Peticionaria**

**SENTENCIA**

    **San Juan, Puerto Rico, a 30 de marzo de 2001**

        **Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones en el presente caso. En consecuencia, se remite el mismo al tribunal de instancia para que señale una vista en la cual le debe permitir a la peticionaria Evanston presentar evidencia sobre los términos y condiciones de la póliza expedida por dicha parte, luego de lo cual dicho foro deberá determinar la suma de dinero por la cual responde dicha compañía aseguradora ante la parte demandante.**

        **Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón inhibida. El Juez Asociado señor Hernández Denton no intervino. El Juez Asociado señor Rivera Pérez no interviene.**

                         **Isabel Llompart Zeno**
                            **Secretaria del Tribunal Supremo**