Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| UNITED SURETY AND INDEMNITY COMPANY<br><br>Apelante<br><br>v.<br><br>VACACIONES TOURS, INC.; RODOLFO YEGROS TORRES, FULANA DE TAL y otros<br><br>Apelados | KLAN202400582 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2023CV06454 (903)<br><br>Sobre: Cobro de Dinero-Ordinario |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de julio de 2024.

Comparece ante nos United Surety and Indemnity Company ("USIC" o "Apelante") mediante una *Apelación* presentada el 12 de junio de 2024. Nos solicita que modifiquemos la *Sentencia* que se dictó el 12 de abril de 2024 y se notificó el 15 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o "foro *a quo*"). Por virtud de la misma, el foro primario declaró *Ha Lugar* una *Demanda* sobre cobro de dinero incoada por la Apelante y, en consecuencia, le concedió el pago de $40,283.71 por concepto de deuda principal, más intereses al tipo legal aplicable sobre dicha cuantía desde la fecha en que se emitió el dictamen, además de las costas y gastos del litigio.

Por los fundamentos expuestos a continuación, **modificamos** la sentencia apelada, y así modificada, confirmamos.

### I.

El 26 de junio de 2023, USIC instó una *Demanda* sobre cobro de dinero contra Vacaciones Tours, Inc. ("VTI"), Rodolfo Yegros

Número Identificador

SEN2024_____

Torres ("señor Yegros") y otros demandados de nombre desconocido (en conjunto, "los Apelados").[1] Alegó que, el 8 de mayo de 2012, la Apelante emitió la fianza número 12151320 a solicitud de VTI para garantizarle a Airlines Reporting Corporation ("ARC") cualquier deuda contraída por VTI bajo el *ARC Carrier Services Agreement* suscrito por estas partes. Arguyó que, posteriormente, los Apelados suscribieron ante un notario un *General Agreement of Indemnity* mediante el cual se obligaron solidariamente a rembolsarle a USIC cualquier suma de dinero pagada bajo las fianzas expedidas a solicitud de VTI. Indicó que, el 25 de agosto de 2021, ARC presentó una reclamación ante USIC por el monto de $40,283.71 bajo la fianza 12151320. Esgrimió que, tras la investigación de rigor, la Apelante procedió con el pago de la reclamación remitiéndole a ARC la suma solicitada.

Igualmente, USIC esbozó que, una vez emitió este pago, ha tratò de comunicarse con los Apelados para recobrar la suma adeudada pero dichos esfuerzos no han rendido frutos. Por tal motivo, solicitó el pago de $40,283.71, la cual sostuvo que era una suma final, líquida y exigible, conforme a lo establecido por el acuerdo de indemnización suscrito entre las partes. De igual forma, solicitó el pago de los intereses acumulados sobre dicha suma desde la fecha en que se originó la deuda hasta la fecha del pago, más la suma concerniente a honorarios de abogados incurridos en la tramitación del presente pleito.

El 2 de octubre de 2023, USIC presentó una *Moción Solicitando Emplazamientos por Edictos*.[2] En esta, informó que el emplazador realizó numerosas gestiones para localizar al señor Yegros, quien a su vez era el agente residente de VTI, pero estas fueron infructuosas. Ante esto, le solicitó al foro primario que

---

[1] Apéndice apelación, pág. 70-72.
[2] *Íd.*, págs. 73-75.

ordenara la expedición del emplazamiento por edicto conforme a la Regla 4.6 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 4.6. Así pues, el 6 de octubre de 2023, el foro *a quo* emitió una *Orden Autorizando Emplazar mediante Edicto*.[3]

Acto seguido, el 8 de febrero de 2024, USIC presentó una *Moción Soltando la Anotación de Rebeldía y que se dicte Sentencia en Rebeldía*.[4] En síntesis, arguyó que tras haberse publicado el emplazamiento por edicto y transcurrido el término para comparecer, ninguno de los Apelados presentó su alegación responsiva. Por consiguiente, solicitó que se dieran por admitidas las alegaciones de la *Demanda* y, en consecuencia, condenara a los Apelados al pago del monto principal de $40,283.71 más la suma de $5,882.80 en intereses de la deuda calculados desde la fecha de su origen y, del mismo modo, el pago de $2,080.98 por los gastos legales incurridos. Cabe mencionar que dicha moción estuvo acompañada por una declaración jurada suscrita por el Director del Departamento de Reclamaciones de USIC, en la cual juramentó como ciertos los hecho de la *Demanda* y detalló los montos previamente mencionados.

Así las cosas, el 15 de febrero de 2024, el señor Yegros presentó una *Moción* por derecho propio en la cual expresó que se enteró del edicto por conducto de un amigo. A esos fines solicitó al foro primario que le concediera cuarenta y cinco (45) días para conseguir representación legal.[5] Cónsono con lo anterior, ese mismo día, el foro primario le concedió treinta (30) días para que el señor Yegros compareciera con abogado.[6] Subsiguientemente, el 19 de marzo de 2024, el foro *a quo* emitió una *Orden* en la cual le concedió siete (7) días finales al señor Yegros para que cumpliera con la *Orden*

---

[3] *Íd.*, pág. 83.
[4] *Íd.*, pág. 89-91.
[5] *Íd.*, pág. 95.
[6] *Íd.*, pág. 95.

emitida el 15 de febrero de 2024. De no cumplir con lo ordenado se le anotaría la rebeldía.[7] Surge de la aludida *Orden,* que se le anotó la rebeldía a VTI.[8]

Ulteriormente, el 12 de abril de 2024, USIC presentó una *Moción en Cumplimiento de Orden; Solicitando la Anotación de Rebeldía; y que se Dicte Sentencia en Rebeldía.*[9] Mediante esta, la Apelante resumió el tracto procesal del caso y destacó la incomparecencia del señor Yegros. Además, solicitó el pago de $40,283.71 del principal, $6,727.22 por concepto de intereses acumulados desde la fecha en que la deuda principal se originó y el pago de $2,916.98 en gastos legales. Asimismo, la Apelante presentó esta moción junto a una declaración jurada suscrita el 12 de abril de 2024 por el Director del Departamento Reclamaciones de USIC.

Atendido este escrito, el foro primario emitió su *Sentencia* el 12 de abril de 2024 y la notificó el 15 de abril de 2024.[10] Por virtud de esta, le anotó la rebeldía al señor Yegros y declaró *Ha Lugar* la *Demanda.* En consecuencia, condenó a los Apelados al pago de $40,283.71 por concepto de deuda, más los intereses legales aplicables a partir de la fecha de dictada la sentencia, además de las costas y gastos del litigio. En desacuerdo con esta determinación, el 15 de abril de 2024, USIC presentó una *Moción de Reconsideración.*[11] En esencia, solicitó que se añadiera a la *Sentencia* el pago de $5,882.80 por concepto de intereses, los cuales, a juicio de la Apelante, debían calcularse a partir de la fecha en que se emitió el pago originalmente. Además, solicitó el pago de $2,082.98 por los gastos del litigio. La razón de la aludida inconformidad responde a que, conforme al párrafo dos (2) del *General Agreement Of Indemnity,* los Apelados debían pagar los

---

[7] *Íd.,* pág. 95.
[8] *Íd.*
[9] *Íd.,* págs. 98-101.
[10] *Íd.,* pág. 3-4.
[11] *Íd.,* pág. 104-106.

intereses sobre la suma adeudada desde la fecha en que se originó la deuda y los gastos legales incurridos como consecuencia de las reclamaciones de recobro de la fianza emitida.

Evaluado este escrito, el 16 de abril de 2024, notificado el 19 de abril de 2024, el foro primario emitió una *Orden* en la cual determinó lo siguiente: "[n]o ha lugar; la cantidad otorgada en la Sentencia [29] es la cuantía específicamente reclamada en la demanda [1] y apoyada mediante declaración jurada: $40,283.71".[12]

Inconforme aún, el 12 de abril de 2024, USIC compareció ante nos mediante una *Apelación* y le imputó al TPI la comisión del siguiente error:

> Erró el TPI al no condenar a VTI y a Rodolfo Yegros Torres al pago de los intereses acumulados sobre la deuda principal desde la fecha que se originó la misma, y al pago de honorarios de abogados, a pesar de que dichos demandados se obligaron con USIC a pagar dichas partidas mediante el Acuerdo de Indemnización suscrito bajo juramento por éstos.

El 20 de junio de 2024, emitimos una *Resolución* en la cual, entre otros asuntos, le concedimos a los Apelados hasta el 12 de julio de 2024 para que presentara su postura. En vista de que dicha parte no compareció, procedemos a resolver la controversia sin el beneficio de su comparecencia.

## II.
### A. Los Contratos

El Art. 1042 del Código Civil enumera las fuentes de las obligaciones reconocidas por nuestro ordenamiento jurídico. Así, el referido artículo dispone que "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia".[13] En

---

[12] *Íd.*, pág. 111.

[13] Art. 1042 del Código Civil de Puerto Rico de 1930, según enmendado, 31 LPRA sec. 2992, (en adelante, "Código Civil"). El referido Código Civil de Puerto Rico de 1930, según enmendado, fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia ante nuestra consideración.

particular, sobre las obligaciones de naturaleza contractual, el Art. 1206 establece que un "contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio". 31 LPRA sec. 3371. Ahora bien, para que un contrato sea fuente de obligaciones es necesario que concurran los siguientes requisitos: (1) consentimiento [válido] de los contratantes; (2) objeto cierto que sea materia del contrato, y (3) causa de la obligación que se establezca. Arts. 1213 y 1230 del Código Civil, 31 LPRA secs. 3451 y 3391; *Díaz Ayala et al. v. E.L.A.*, 153 DPR 675, 690-691 (2001). Habida cuenta de lo anterior, al concurrir los referidos elementos nace una obligación contractual válida, es decir, lo suscrito cobra vida jurídica.

Como es sabido, en nuestro ordenamiento jurídico impera el principio de la autonomía de la voluntad, en virtud del cual las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral, ni al orden público. Art. 1207 del Código Civil, 31 LPRA sec. 3372; *Álvarez v. Rivera*, 165 DPR 1 (2005). Además, otro axioma que rige en nuestra jurisdicción es la libertad de contratación. Éste, entre otras cosas, permite que "[l]os contratos [sean] obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". Art. 1230 del Código Civil, 31 LPRA sec. 3451. En otras palabras, como regla general, una obligación contractual cobra vida jurídica independientemente de la forma mediante la cual las partes finalmente concreten dicha obligación, salvo que por ley se exija – como requisito *ad solemnitatem* – una forma específica de otorgamiento para su validez.

De la misma forma, es un principio prevaleciente en nuestro sistema de derecho que las relaciones contractuales se rigen por el principio de *pacta sunt servanda*. El referido principio, estatuido en

el Art. 1044 del Código Civil, establece que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". 31 LPRA sec. 2994; *PRFS v. Promoexport,* 187 DPR 42, 52 (2012). Como corolario, luego de perfeccionado el contrato, las partes quedan obligadas no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art 1210 del Código Civil, 31 LPRA sec. 3375.De manera que, los tribunales no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato cuando este es legal y válido y no contiene vicio alguno. *De Jesús González v. A.C.,* 148 DPR 255, 271 (1999).

**III.**

En su único señalamiento de error, la Apelante sostiene que el foro primario incidió al no condenar a VTI y al señor Yegros al pago de los intereses acumulados sobre la deuda principal desde la fecha que esta se originó y al pago de honorarios de abogados pese a que, conforme al Acuerdo de Indemnización suscrito por las partes, dichos pagos debían realizarse. Le asiste la razón. Veamos.

Conforme surge del expediente, el 15 de abril de 2015, VTI, el señor Yegros y USIC suscribieron un documento intitulado *General Agreemento of Indemnity* ("GAI"). El párrafo dos (2) del aludido documento dispone lo siguiente:

> The indemnitors shall at all times indemnify and keep indemnified the Surety and hold and save it harmless from and against any and all liability, losses, costs, damages, **attorneys and counsel fees**, and disbursements, and expenses of whatever kind or nature which the Surety may sustain or incur by reason or in consequence of having executed or procured the execution of such bond or bonds, and any renewal, continuation, extension or successor thereof, and all other bonds heretofore or hereafter executed or procured for or at the request of the Principal, and which the Surety may sustain or incur in taking any steps it may deem necessary in making any investigation, in defending or prosecuting any actions, suits or other proceedings which may be brought under or in connection therewith, or in recovering or attempting to recover salvage or any unpaid bond premium, in obtaining or attempting to obtain release

from liability, or in enforcing any of the covenants of this agreement; to pay over, reimburse and make good to the Surety, its successor or assigns, all money which the Surety or its representatives shall pay, or cause to be paid or become liable to pay, by reason of the execution of such bond or bonds, and any renewal, continuance, extension or successor hereof, and all other bonds heretofore or hereafter executed or procured for or at the request of the principal, **including interest per annum on all money paid or advanced by the Surety as well as expenses incurred, from the date of payment, at the highest legal rate chargeable to individuals or legal entities, as the case may be, in the Commonwealth of Puerto Rico as established by its Office of the Commissioner of Financial Institutions**, and such payment to be made to the Surety as soon as it shall become liable therefore, whether the Surety shall have paid out such sum or any part thereof, or not.[14] (Énfasis suplido)

De la precitada cláusula, se desprende que las partes acordaron que en caso de que USIC realizara gestiones para recobrar una fianza, los Apelados debían costear una serie de gastos entre estos, **aquellos concernientes a honorarios de abogados**. Asimismo, del GAI se desprende que, en estos procesos de recobro se deberá pagar el interés por año de todo el dinero pagado por USIC, **desde la fecha del pago**, al interés legal conforme lo establece la Oficina del Comisionado de Instituciones Financieras.

No obstante, en la *Sentencia* apelada, el foro primario hizo la siguiente determinación:

> Cónsono con ello se condena a la parte demandada, VACACIONES TOURS, INC; RODOLFO YEGROS TORRES; FULANA DE TAL; Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTAS ENTRE RODOLFO YEGROS TORRES Y FULANA DE TAL , al pago de $40,283.71 por concepto de la deuda aquí reclamada, más intereses al tipo legal aplicable según publicado por la Oficina del Comisionado de Instituciones Financieras a computarse sobre la cuantía de la sentencia desde la fecha en que se dicte la Sentencia hasta que esta sea satisfecha, más las costas y gastos del litigio.[15]

Es de notar que, del lenguaje previamente citado, el foro *a quo* concedió el monto del principal, el cual era **$40,283.71**. No obstante, omitió incluir los montos concernientes a los intereses calculados de dicho principal desde la fecha en que se originó la deuda y la cuantía de los honorarios de abogados conforme se pactó

---

[14] Apéndice de la Apelación, pág. 30.
[15] *Íd.,* pág. 4.

en el GAI. Ello, pese a que dichas cuantías fueron reclamadas no solo en la *Demanda* que dio origen a este pleito, sino que también fueron solicitadas y detalladas en dos (2) mociones que solicitaban que se dictara sentencia en rebeldía, las cuales, a su vez, fueron sustentadas mediante declaración jurada.

Toda vez que el texto del acuerdo es claro, siendo esta la voluntad de las partes y habiéndose presentado prueba que evidenciara las cuantías solicitadas, es forzoso concluir que en la *Sentencia* apelada se debió incluir la partida concerniente a los intereses de la acreencia calculados a partir de la fecha en que se originó la deuda y los honorarios de abogados. Por consiguiente, modificamos la *Sentencia* a los efectos de que se incluyan las partidas detalladas en la *Declaración Jurada* que acompañó la *Moción en Cumplimiento de Orden; Solicitando la Anotación de Rebeldía y que se dicte Sentencia en Rebeldía* suscrita el 12 de abril de 2024,[16] a saber: **$6,727.22** en intereses acumulados desde la fecha en que se emitió el pago de la fianza y **$2,916.98** por concepto de servicios legales incurridos referente a la reclamación de epígrafe.

**IV.**

Por los fundamentos anteriormente expuestos, modificamos la Sentencia apelada a los únicos efectos de incluir la partida de **$6,727.22** por concepto de intereses acumulados desde que se originó la deuda y **$2,916.98** por concepto de servicios legales incurridos referente a la reclamación de epígrafe. Así modificada, se confirma.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[16] *Íd.,* pág. 102.