Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| LUIS R. CARMONA RESTO, RUTH N. APONTE COTTO y la Sociedad Legal de Bienes Gananciales<br><br>Apelantes<br><br>v.<br><br>DELIRIS IRIZARRY RODRÍGUEZ<br><br>Apelada | KLAN202400793 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2020CV00948 (207)<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de octubre de 2024.

Comparece ante nos el señor Luis R. Carmona Resto, ("señor Carmona Resto"), Ruth Aponte Cotto y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, "los Apelantes") mediante una *Apelación* presentada el 28 de agosto de 2024. Nos solicita que revoquemos la *Sentencia* dictada el 26 de junio de 2024 y notificada el 27 de junio del mismo año, por el Tribunal de Primera Instancia, Sala Superior Humacao ("foro primario" o "foro *a quo*"). Mediante el aludido dictamen, el foro primario determinó que el señor Carmona Resto le donó cincuenta y nueve mil novecientos sesenta y tres dólares con noventa centavos ($59,963.90) a la señora Deliris Irizarry Rodríguez ("señora Irizarry Rodríguez" o "Apelada"). En consecuencia, declaró *No Ha Lugar l*a reclamación sobre cobro de dinero instada contra de la Apelada.

Por los fundamentos que expondremos a continuación, **confirmamos** la *Sentencia* apelada.

Número Identificador

SEN2024_____

**I**.

El 6 de octubre de 2020, el señor Carmona Resto incoó una *Demanda* sobre cobro de dinero contra la señora Irizarry Rodríguez.[1] Mediante esta, alegó que, el 27 de octubre de 2016, le prestó a la Apelada la cantidad agregada de cincuenta y seis mil doscientos un dólar con cuarenta y cinco centavos ($56,201.45), por medio de dos (2) cheques. Detalló que uno de los cheques fue girado a favor de la señora Eladia González Muñoz por la cantidad de cincuenta y cinco mil ciento cuarenta y siente dólares con cuarenta y cinco centavos ($55,147.45) y el otro cheque fue girado a favor del licenciado Jesús Hernández Contreras. Adujo que los aludidos cheques se concedieron para que la Apelada comprara y cubriera los gastos de cierre de una propiedad inmueble ubicada en el municipio de Las Piedras.

Igualmente, de la *Demanda* se desprende que el Apelante le prestó tres mil setecientos sesenta y dos dólares con cuarenta y dos centavos ($3,762.42) adicionales, mediante dos (2) cheques girados a favor del Centro de Recaudaciones de Ingresos Municipales ("CRIM"). Del mismo modo, el señor Carmona Resto indicó que el total de todos los cheques emitidos totalizaban cincuenta y nueve mil novecientos sesenta y tres dólares con noventa centavos ($59,963.90), dicha cantidad de dinero fue la que le prestó a la Apelada.

A su vez, el Apelante enfatizó que realizó varias gestiones para recobrar esta cuantía, pero la Apelada se negó a pagarle. Por tales razones, le solicitó al foro primario que condenara a la señora Irizarry Rodríguez al pago de la suma antes mencionada, más el interés legal aplicable, las costas, los gastos y los honorarios de abogados.

---

[1] Véase, Apéndice de los Apelantes, págs. 1-3.

En respuesta, el 10 de noviembre de 2020, la Apelada presentó *Contestación a la Demanda.*[2] En está arguyó que el dinero presuntamente prestado por el señor Carmona Resto se trataba de un regalo. Sostuvo que no se firmó ningún documento sobre acuerdo de préstamo ni existieron conversaciones o acuerdos verbales sobre ese particular. Además, destacó que el señor Carmona Resto entregó el dinero en forma de regalo debido a "la relación sentimental que existió por (7) años" entre estas partes.[3]

Por su lado, el 24 de noviembre de 2024, el señor Carmona Resto presentó *Réplica a Contestación de la Demanda.*[4] Mediante esta, reiteró que, en efecto, el dinero reclamado en la *Demanda* fue un préstamo y no un regalo. Indicó que, por esa razón, fue que los cheques se giraron específicamente a nombre de la señora Eladia González Muñoz, quien fue la vendedora del inmueble; al licenciado Jesús Hernández Contreras, quien fue el notario público y al CRIM.

Tras varias incidencias procesales las cuales son innecesarias pormenorizar, el 28 de febrero de 2024, se llevó a cabo una conferencia inicial.[5] En esta, las partes manifestaron que había culminado el descubrimiento de prueba, por lo que solicitaron que se señalara fecha para la vista. En ese sentido, el foro primario ordenó que las partes presentaran el informe entre abogados en o antes del 31 de marzo de 2023. Igualmente, se señaló la vista de conferencia con antelación a juicio para el 11 de abril de 2024.

Así las cosas, el 3 de abril de 2024, las partes presentaron el *Informe sobre Conferencia Preliminar entre Abogados.*[6] En este, el señor Carmona Resto esbozó que las actuaciones de la Apelada pudieron constituir explotación financiera conforme lo establece la

---

[2] *Íd.*, págs. 13-14.
[3] *Íd.*, pág. 13.
[4] *Íd.*, págs. 15-16.
[5] *Íd.*, pág. 38.
[6] *Íd.*, págs. 39-53.

Ley 58-2009.[7]  Asimismo, insistió que la cuantía en controversia consistía en un préstamo a la señora Irizarry Rodríguez para la adquisición de un inmueble y que una vez esta obtuviera un financiamiento, se rembolsaría el dinero prestado.  Por su parte, la Apelada negó que procedía una causa de acción al amparo de la Ley 58-2009, ya que la transacción entre el señor Carmona Resto y la señora Irizarry Rodríguez se dio en el marco de una relación amorosa entre estos.

Así pues, el 17 de abril de 2024, se llevó a cabo la conferencia con antelación a juicio.[8]  Conforme surge de la *Minuta* de la vista, las partes expusieron brevemente en qué consistía la controversia y elaboraron sus respectivas teorías legales.  Del mismo modo, se admitió algunos documentos como evidencia.  A su vez, la jueza que presidió los procedimientos le preguntó a la representación legal del señor Carmona Resto en qué consistía su alegación con respecto a la Ley 58-2009.  Ante esta interrogante, el abogado elaboró su teoría legal y sostuvo que su cliente era un hombre mayor y la Apelada una mujer veinte (20) años más joven.  Agregó que estos tenían una relación de amistad de muchos años, por lo que el señor Carmona Resto entendió que podía ayudarla.  Por su parte, la representación legal de la Apelada esbozó que en este caso existía falta de parte indispensable, toda vez que el Señor Carmona Resto se encontraba casado al momento de la transacción y el dinero en controversia era parte de la sociedad legal de gananciales.

A tono con lo anterior, el foro primario concluyó que, si el dinero era ganancial, era necesario la comparecencia de la esposa del señor Resto Carmona.  Por ello, le concedió treinta (30) días para que se enmendara la demanda, y que una vez presentada y autorizada, se otorgaría un breve término a las partes para el

---

[7] *Íd.*, págs. 40.
[8] *Íd.*, págs. 87-88.

descubrimiento de prueba. Oportunamente, el 10 de mayo de 2024, el Apelante presentó *Solicitud a Enmienda de Demanda al Amparo de la Regla 13.1 de las de Procedimiento Civil.*[9] En esta informó que, en la vista de conferencia con antelación a juicio se determinó que procedía enmendar la *Demanda* a los efectos de incluir como parte demandante, además del señor Carmona Resto, a la señora Ruth Aponte Cotto y la Sociedad Legal de Gananciales compuesta por ambos. De igual manera, expresó que se enmendó la demanda para además incluir la alegación de explotación financiera. Así pues, el 12 de mayo de 2024, el foro primario declaró Ha lugar dicha solicitud.[10]

Por su parte, el 22 de julio de 2023, la señora Irizarry presentó *Contestación a la Demanda Enmendada.*[11] En lo pertinente, reiteró su postura en cuanto a que los cheques emitidos para la compra de la residencia fueron un regalo debido como consecuente de una relación sentimental. De igual manera, agregó que en la presente controversia, la reclamación no cumplió con los requisito de que se encuentre la deuda líquida, vencida y exigible conforme lo exige nuestro estado de derecho.

Tras varias incidencias, el 29 de abril de 2024, se llevó a cabo el juicio en su fondo.[12] Desfilada la prueba, el foro primario concedió treinta (30) días para que las partes presentaran memorando de derecho. Tras los Apelantes solicitar una prórroga y el foro primario haberle concedido la misma,[13] el 21 de junio de 2024, estos presentaron *Memorando de Derecho.*[14] En el mismo, expusieron que, en la presente controversia, existían aspectos que constituían explotación financiera. Además, trajeron a colación el fundamento

---

[9] *Íd.*, págs. 91-92.
[10] *Íd.*, pág. 101.
[11] *Íd.*, págs. 111-112.
[12] *Íd.*, págs., 136-138.
[13] *Íd.*, págs. 139-141.
[14] *Íd.*, págs. 142-149.

referente a que, conforme nuestro ordenamiento jurídico, la parte que paga por otro tiene disponible una acción de rembolso contra el deudor a través de la figura de subrogación. De otra parte, el 25 de junio de 2024, la Apelada presentó *Memorando de Derecho.*[15] Esta esgrimió que no se configuraron los requisitos para que se considere una deuda líquida, vencible y exigible.

Evaluadas las posturas de las partes, el foro primario dictó *Sentencia* el 26 de junio de 2024, notificada el 27 de junio del mismo año.[16] Mediante esta, el foro *a quo* formuló las siguientes determinaciones de hechos:

1. El demandante nació el 5 de mayo de 1953.

2. La demandada nació el 27 de junio de 1969.

3. El demandante es residente del municipio de Bayamón, PR.

4. La demandada es residente del municipio de Las Piedras, PR.

5. La compraventa efectuada es de la propiedad localizada en el barrio Quebrada Grande, sector La Pica, casa 61, Las Piedras, PR 00771.

6. La demandada es la dueña de la propiedad localizada en el barrio Quebrada Grande, sector La Pica, casa 61, Las Piedras, PR 00771.

7. El dinero utilizado para la compra de la propiedad localizada en el barrio Quebrada Grande, sector La Pica, casa 61, Las Piedras, PR 00771, lo regaló el demandante.

8. El demandante se encontraba casado al momento de dar el dinero para la compra de la propiedad localizada en el barrio Quebrada Grande, sector La Pica, casa 61, Las Piedras, PR 00771.

9. La demandada se encontraba soltera al momento de comprar la propiedad localizada en el barrio Quebrada Grande, sector La Pica, casa 61, Las Piedras, PR 00771.

10. La demandada no trabajaba ni generaba ingresos al momento de comprar la propiedad localizada en el barrio Quebrada Grande, sector La Pica, casa 61, Las Piedras, PR 00771.

11. **Entre la parte demandante y la demandada existió una relación amorosa de intimidad desde el año 2013 y culminó en el año 2020** (Énfasis suplido).[17]

---

[15] *Íd.*, págs. 150-155.
[16] *Íd.*, págs. 157-162.
[17] *Íd.*, págs. 159-160.

Conforme a las determinaciones de hechos, el foro *a quo* dictaminó que, tras haber evaluado la prueba que tenía ante sí, se configuró una donación de un bien mueble de forma verbal. Es decir, se adjudicó por el foro primario que el señor Carmona Resto donó la cuantía de cincuenta y nueve mil novecientos sesenta y tres dólares con noventa centavos $59,963.90 a la señora Irizarry Rodríguez. En cuanto a la alegación de explotación financiera, el foro primario dictaminó que la misma no quedó demostrada mediante prueba, por lo que constituye solamente una mera alegación.

Inconforme, el 12 de julio de 2024, los Apelantes presentaron *Reconsideración.*[18] Esencialmente, reiteraron su postura en cuanto a que, en este caso, estaban presente los elementos de explotación financiera y, esbozó que, en el caso de autos aplicaba la figura de pagos efectuados por tercero. Atendido el escrito, el 30 de julio de 2024, el foro primario declaró *No Ha Lugar* la reconsideración.[19]

Insatisfechos aun, el 28 de agosto de 2024, los Apelantes presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

> Erró el TPI al no considerar la alegación de explotación financiera de la parte demandante-apelante ante el engaño de la parte demandada-apelada al haber inducido a la parte demandante-apelante a prestar dinero con miras a su devolución utilizando la amistad y edad avanzada de la parte demandante-apelante.
>
> Erró le TPI al no reconocer el pago efectuado a nombre de otro.

El 3 de septiembre de 2024, emitimos *Resolución* en la que le concedimos un término de treinta (30) días a la parte Apelada para que expusiera su posición en torno al recurso. Oportunamente, el 1 de octubre de 2024, la señora Irizarry Rodríguez presentó *Alegato en Oposición a la Apelación.* En esencia, sostuvo que los errores

---

[18] *Íd.*, págs. 165-170.
[19] *Íd.*, pág. 171.

formulados por el Apelante constituían meras alegaciones que no constituyeron evidencia por lo cual, el foro primario no cometió error alguno.

Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso de autos.

**II.**

### A. *Estándar de Revisión de Apreciación de Prueba*

La Regla 43.2 de Procedimiento Civil, 32 LPRA Ap. V. R. 43.2 establece en lo pertinente que "[l]as determinaciones de hecho basadas en el testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos."

En nuestro ordenamiento jurídico, la "tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada". *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 792 (2020). Esto "incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Íd,* citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). Los tribunales apelativos "no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos". *Dávila Nieves v. Meléndez Marín, supra,* pág. 770.

Por ello, los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza ese foro *Sucn. Rosado v. Acevedo Marrero,* 196 DPR 844, 917 (2016). Sin embargo, esa deferencia descansa en un marco de discreción y razonabilidad.

*Citibank NA v. Cordero Badillo,* 200 DPR 724, 735 (2018). La discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016). Así que, ese juicio discrecional "no es en función al antojo o voluntad de uno, sin tasa ni limitación alguna". *Santa Aponte v. Srio. Hacienda,* 105 DPR 750, 770 (1977). Los tribunales revisores podremos sustituir el criterio que utilizó el foro primario por el nuestro únicamente cuando existen circunstancias extraordinarias en las que se pruebe que el foro primario actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en un error manifiesto o de derecho**.** *Citibank NA v. Cordero Badillo, supra,* pág. 736.

Se dice que el tribunal incurrió en un error manifiesto "cuando, de un análisis de la totalidad de la evidencia, el tribunal apelativo queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hecho del tribunal". *Gómez Márquez et al. v. El Oriental,* supra, pág. 793*.* Esto implica que "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". *Íd.* Véase, también, *Pueblo v. Rivera Montalvo,* 205 DPR 352, 374 (2020). Dicho estándar de revisión, "restringe nuestra facultad para sustituir el criterio del foro primario a escenarios en los que de la prueba admitida *no exista base suficiente que apoye tal determinación". Pueblo v. Toro Martínez,* 200 DPR 834, 859 (2018). (Énfasis en original).

Por otro lado, el juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento sin importar la prueba recibida en sala e incluso antes de que se

someta prueba alguna". *Dávila Nieves v. Meléndez Marín, supra*, pág. 782. De otra parte, un tribunal puede incurrir en abuso de discreción cuando el juez: (1) ignora sin fundamento algún hecho material importante que no podía pasar por alto, (2) concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, (3) a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. *Pueblo v. Sanders Cordero*, 199 DPR 827, 841 (2018).

Cónsono con lo anterior, la Regla 19 (A) del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 19, dispone lo siguiente:

> Cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, **someterá una transcripción**, una exposición estipulada o una exposición narrativa de la prueba. (Énfasis nuestro).

A tenor con lo dispuesto en la aludida regla, aquella parte que señale un error referente a la suficiencia de la prueba o la apreciación errónea de esta es quien tiene la responsabilidad de someter al foro revisor una transcripción, una exposición estipulada o una exposición narrativa de la prueba. El foro intermedio apelativo no puede cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de los mecanismos provistos para ello, la prueba que tuvo ante sí el foro primario.

### B. Los Contratos

El Art. 1042 del Código Civil enumera las fuentes de las obligaciones reconocidas por nuestro ordenamiento jurídico. Así, el referido artículo dispone que "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia".[20] En

---

[20] Art. 1042 del Código Civil de Puerto Rico de 1930, según enmendado, 31 LPRA sec. 2992, (en adelante, "Código Civil"). El referido Código Civil de Puerto Rico de 1930, según enmendado, fue derogado por el Código Civil de Puerto Rico de 2020

particular, sobre las obligaciones de naturaleza contractual, el Art. 1206 establece que un "contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio". 31 LPRA sec. 3371. Ahora bien, para que un contrato sea fuente de obligaciones es necesario que concurran los siguientes requisitos: (1) consentimiento [válido] de los contratantes; (2) objeto cierto que sea materia del contrato, y (3) causa de la obligación que se establezca. Arts. 1213 y 1230 del Código Civil, 31 LPRA secs. 3451 y 3391; *Díaz Ayala et al. v. E.L.A.*, 153 DPR 675, 690-691 (2001). Habida cuenta de lo anterior, al concurrir los referidos elementos nace una obligación contractual válida, es decir, lo suscrito cobra vida jurídica.

Como es sabido, en nuestro ordenamiento jurídico impera el principio de la autonomía de la voluntad, en virtud del cual las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral, ni al orden público. Art. 1207 del Código Civil, 31 LPRA sec. 3372; *Álvarez v. Rivera*, 165 DPR 1, 17 (2005).

De la misma forma, es un principio prevaleciente en nuestro sistema de derecho que las relaciones contractuales se rigen por el principio de *pacta sunt servanda*. El referido principio, estatuido en el Art. 1044 del Código Civil, establece que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". 31 LPRA sec. 2994; *PRFS v. Promoexport*, 187 DPR 42, 52 (2012). Como corolario, luego de perfeccionado el contrato, las partes quedan obligadas no solo al cumplimiento de lo expresamente pactado, sino

---

aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia ante nuestra consideración.

también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art 1210 del Código Civil, 31 LPRA sec. 3375. De manera que, los tribunales no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato cuando este es legal y válido y no contiene vicio alguno. *De Jesús González v. A.C.,* 148 DPR 255, 271 (1999).

De otro lado, en lo pertinente a la controversia que nos ocupa, el Artículo 574 del *Código Civil de 1930,* establece que la donación de cosa mueble podrá hacerse verbalmente o por escrito. Véase, 31 LPRA sec. 2009. Si se hace de manera verbal, se requiere la entrega simultanea de la cosa donada. *Íd.* No obstante, el Código Civil establece que, "[f]altando este requisito, no surtirá efecto si no se hace por escrito y consta en la misma forma la aceptación". *Íd.* Véase, además, *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 583 (2000).

### III.

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, procedemos a resolver la controversia que está ante nuestra consideración. Los Apelantes nos solicitan que revoquemos la *Sentencia* emitida por el foro primario el 26 de junio de 2024, notificada al día siguiente, en la que declaró *No Ha Lugar* la causa de acción en cobro de dinero presentada por los Apelantes. Sostiene, como primer señalamiento de error, que el foro *a quo* incidió en no considerar la alegación de explotación financiera esbozada. De igual manera, como segundo señalamiento de error, plantea que el foro primario erró en no reconocer la figura de pago efectuado a nombre de otro. No le asiste la razón. Veamos.

Por tratarse de errores íntimamente relacionados, procederemos a discutirlos de manera conjunta. Conforme surge del expediente ante nuestra consideración, el 29 de abril de 2024, se llevó a cabo el juicio en su fondo. En dicha vista, se desfiló tanto

prueba documental como testifical. A base de esa prueba, y tras las partes de epígrafe presentar su respectivo memorando de derecho, el foro primario dictó *Sentencia.* En lo pertinente, del dictamen apelado se desprende la siguiente expresión: "[e]n cuanto a la alegación de explotación financiera de parte de la demandada hacia el demandante, la misma no quedó demostrada mediante evidencia robusta y convincente, solamente fue una mera alegación que no hace prueba".[21] Asimismo, no surge ni de la *Minuta* del juicio ni de la propia *Sentencia* que el Apelante haya presentado prueba con el fin de demostrar que en el caso de marras se configuró la figura de pago a nombre de otro.

Asimismo, es menester destacar que, entre las determinaciones de hechos formuladas por el foro primario en su dictamen, surge que entre el señor Carmona Resto y la señora Irizarry Cruz "existió una relación amorosa de intimidad desde el año 2013 y culminó en el año 2020".[22] A la luz del testimonio vertido por la Apelada, y al cual el foro primario le dio completa credibilidad, se concluyó que en este caso se configuró una donación de un bien mueble de forma verbal. Es decir, la cuantía de cincuenta y nueve mil novecientos sesenta y tres dólares con noventa centavos ($59,963.90) fue un regalo, por lo cual nunca hubo una deuda que diera paso a la acción en cobro de dinero.

Nótese que la determinación del foro *a quo* se cimenta en la prueba que desfiló en el juicio en su fondo. Asimismo, es preciso resaltar que los dos (2) señalamientos de error esbozados por los Apelantes impugnan dicha determinación. Así pues, para poder cumplir cabalmente con nuestra función revisora y atender los señalamientos de error esgrimidos por el Apelante, es necesario realizar un examen de la prueba oral desfilada. Ello es

---

[21] Véase, Apéndice de los Apelantes, pág. 162.
[22] Íd., pág. 160.

indispensable, toda vez que es la única forma de poder justipreciar si el foro *a quo* actuó movido por pasión, prejuicio, parcialidad o incurrió en error manifiesto. Esta evaluación es necesaria, ya que "en nuestro ordenamiento jurídico no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba" en ausencia de los elementos previamente mencionados. *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022). Ello responde a la deferencia que le debemos al foro primario, pues es el juzgador de los hechos quien está en mejor posición para aquilatar la prueba testifical ante su consideración. *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 289 (2011).

Tras un minucioso examen del expediente ante nuestra consideración, no encontramos que se haya solicitado la transcripción de la prueba oral conforme con el Reglamento del Tribunal de Apelaciones, *supra*. Es norma reiterada que, si una parte señala un error en la apreciación de la prueba oral, será necesario acudir a la reproducción de esta. 4 LPRA Ap. XXII-B, R. 19. Al omitirse tal trámite, nos vemos imposibilitados de ejercer nuestra función revisora pues, los errores esgrimidos por el Apelante cuestionan la apreciación de la prueba por parte del Tribunal de Primera Instancia.

Por lo tanto, dado a que los errores de los Apelantes están íntimamente relacionados con la apreciación de la prueba y la discreción del foro primario y al no tener los elementos necesarios para poder cumplir nuestra función revisora, colegimos que el Tribunal de Primera Instancia no cometió ninguno de los dos (2) errores formulados.

**IV.**

Por los fundamentos que expondremos a continuación, ***confirmamos*** la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del

Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones